505 A.2d 991

**COMMONWEALTH of Pennsylvania**

v.

**Jack D. GROSSMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1985.

Filed Feb. 20, 1986.

Thomas A. Crawford, Jr., Pittsburgh, for appellant.

John F. Spataro, Assistant District Attorney, Meadville, for Com., appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

HESTER, Judge:

Appellant, Jack D. Grossman, was convicted by jury of fraud in procuring insurance or in collecting claims. Post-verdict motions were denied, and appellant was sentenced to incarceration of six to twelve months. This appeal was taken from the judgment of sentence of February 4, 1985. We affirm.

Appellant was the owner and operator of an insurance agency in Meadville, Crawford County, Pennsylvania. In December, 1981, he secured casualty insurance for Utility Contractors, Inc. and its tenant, Fuller Mop Company. Fuller leased commercial property, and it was obligated under the lease to pay for insurance on the real estate and contents. The insurance was underwritten by Northeast Insurance of Portland, Maine. The Northeast policy lapsed in 1982 for failure to pay premiums.

In October, 1982, appellant accepted $200.00 from Fuller for insurance on Fuller's business and Utility's building. Appellant did not process the application until January 17, 1983, when it was received by Farmers Mutual Insurance Company, a new carrier.

When the building was destroyed by fire on January 13, 1983, Fuller's principal owner called appellant. Appellant did not return the owner's numerous telephone calls; instead, he frenetically processed Fuller's application. The postal service's cancellation stamp on the application envelope was dated January 16, 1983; it was inferred that appellant backdated the application to January 11, 1983, and his postal meter to January 13, 1983.

On March 4, 1983, Officer Jack Young and Detective Jack Loutzenhiser from the City of Meadville Police Department entered appellant's business office. Young remained to secure the premises while Loutzenhiser departed to obtain a search warrant. Loutzenhiser returned in one hour with District Attorney John M. Dawson to present the warrant and conduct a search. Several files were removed, and some were used in two separate criminal proceedings. Fuller's file was seized and used as evidence in this proceeding.[1]

█ Appellant argues that the court erred in denying his motion to suppress Fuller's file because there was a warrantless entry into his business office, the warrant was overly broad and the warrant was improperly executed. We address these alleged grounds for illegal search and seizure ad seriatim.

When there is probable cause to believe that evidence of a crime is on the premises, and when there are no exigent circumstances, do officials have authority to secure the premises pending issuance of a search warrant? This ques-

1. The other proceeding, which is not the subject of this review, concerned numerous counts of theft by failure to make required disposition of funds. Appellant was convicted of thirteen counts and sentenced to serve three concurrent terms of one to four years incarceration. An appeal from that judgment of sentence is pending before this court at No. 666 Pittsburgh, 1984.

tion was addressed by the United States Supreme Court in *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The defendants in *Segura* were implicated by their customers in the sale of controlled substances. A search warrant could not be obtained until the day following the accusation; consequently, officials secured the defendants' apartment in the meantime. This was accomplished by arresting one defendant in the lobby of the apartment building, taking him to his apartment, knocking and entering when the co-defendant answered the door. The co-defendant was arrested, and two officials remained on the premises, awaiting the search warrant which did not issue for either eighteen or nineteen hours after entry. A search pursuant to the warrant was conducted approximately nineteen hours after the initial entry and uncovered narcotics which were admitted into evidence at trial.[2]

The *Segura* court first determined that entering and securing a building pending issuance of a search warrant was a warrantless search. The *Segura* Court did not address the issue as to whether the initial entry into the apartment was justified by exigent circumstances. The district court and the court of appeals both held there were no such circumstances. The government did not seek review of that aspect of *Segura* before the Supreme Court. There the Court stated, *id.* at 796, 104 S.Ct. at 3380, 82 L.Ed.2d at 608:

> At the outset, it is important to focus on the narrow and precise question now before us. As we have noted, the Court of Appeals agreed with the District Court that

---

**2.** The syllabus of *Segura* states: "the search warrant was not issued until some 19 hours after the initial entry into the apartment." 468 U.S. at ——, 104 S.Ct. at 3381, 82 L.Ed.2d at 603. However, a reading of the opinion reveals that the warrant application was presented to the magistrate at 5 P.M. the next day (some 18 hours after the initial entry). The warrant then issued and the search was performed at approximately 6 P.M., some 19 hours after the agents' original entry into the apartment. *Id.* at ——, 104 S.Ct. at 3384, 82 L.Ed.2d at 606. It is not clear to this writer whether the warrant issued 18 or 19 hours following the original entry. It is clear that the search occurred 19 hours following said entry.

the initial warrantless entry, and the limited security search were not justified by exigent circumstances and were therefore illegal. No review of that aspect of the case was sought by the Government and no issue concerning items observed during the initial entry is before the Court. The only issue here is whether drugs and the other items not observed during the initial entry and first discovered by the agents the day after the entry, under an admittedly valid search warrant, should have been suppressed.

Secondly, the *Segura* court held that there may have been a seizure of all contents when the officials entered and secured the apartment. Assuming arguendo that there was a seizure, it was not unreasonable because the evidence was later seized pursuant to a warrant based upon an independent source, and the entry was necessary to prevent destruction and removal of evidence. Therefore, the connection between the unreasonable search and the evidence was "so attenuated as to dissipate the taint." *Id.* at ——, 104 S.Ct. at 3386, 82 L.Ed.2d at 608; quoting *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939).

As in *Segura*, there were sources here unrelated to the entry and known by Young and Loutzenhiser prior to the entry which provided probable cause for the warrant. For example, Young and an official from the insurance commission met with appellant the day before the search to discuss the customer files. When asked about Fuller's premium paid three months before the application was processed, appellant responded that he used the premium to pay other expenses. This was an incriminating statement. This statement, and the numerous complaints by appellant's clients to the insurance commission, provided an independent basis for seizing files.

■ Since appellant knew that the officers were investigating his business practices, the officers feared the removal of files before they had a chance to acquire the warrant. Young secured the premises from within to eliminate this

risk and to compensate for the possibility of a protracted delay in the issuance of a warrant. Whether the entry was unauthorized was inconsequential to the reasonableness of the seizure.

■ Appellant also contends that his customer files should have been suppressed because the warrant authorized a search broader than that supported by probable cause. The particularity clause of the fourth amendment of the United States Constitution prohibits warrants that are not particular and that are overbroad. These are two separate features of the amendment. A warrant lacking particularity authorizes a search in such ambiguous terms that executing officials can select any property. An overly broad warrant may be specific, yet describe many items unrelated to the crime under investigation; therefore, it exceeds the probable cause on which it was based. *See Commonwealth v. Santner*, 308 Pa.Super. 67, 454 A.2d 24 (1982); LaFave, 2 *Search and Seizure* 97 (1978). Appellant takes issue with the scope of the warrant and not with its particularity.

■ As proof of the excessive scope of the warrant, appellant refers to the authorization language: "All insurance files, payment records, receipt records, copies of insurance applications and policies, cancelled checks." According to appellant, this language exceeded the bounds of probable cause because the affidavit described the irregularities of only three customer accounts. The officers seized customer files not described in the affidavit.

The affidavit did not limit the warrant to the three specified files. Those three files contained irregularities known to officials. They also provided probable cause that other files were irregular since appellant was known to have many clients. Other files were suspected because of the numerous complaints to the insurance commissioner concerning appellant's business tactics.

■ Appellant also argues that the warrant was improperly executed as the officers exceeded the warrant by

"kidnapping" appellant's two employees and seizing the entire office. We do not agree. No documents unrelated to the class described in the warrant were seized, and appellant incorrectly considers the personnel to have been seized. The employees were not arrested, and there was no evidence that they were forbidden to leave unless they attempted to remove records.

■ Appellant's next argument concerns his agreement with investigating officers. Two of the three files which were alluded to in the search warrant affidavit were not discovered during the search. Investigating officers offered not to bring charges in addition to those pending if appellant would release those two files and other files with processing problems and point out his misconduct. Appellant released the files without explanation, and the officers filed twelve more counts of theft by failure to make required disposition of funds and the charge here of fraud in procuring insurance.

Appellant assigns error to the trial court's refusal to suppress all information that he released to the Commonwealth. He alleges that several released files were used in these proceedings. Furthermore, he complains that the court refused to recognize the agreement by not dismissing the charge here.[3] We agree with appellant that his release of incriminating information would have been involuntary had the Commonwealth lured him into an agreement that it subsequently dishonored. We also agree that the agreement would have been violated when he was charged with fraud in procuring insurance if the Commonwealth's obligation under the agreement was still binding. The evidence supports the conclusion, however, that the Commonwealth's obligation was discharged by appellant's earlier breach.

---

**3.** The Fuller file was seized during the search; it was not among those files released by appellant. The charge here was not filed until January, 1984, some ten months after the search and agreement. Appellant claims that the agreement precluded all charges filed after the agreement. Fraud in procuring insurance was among those new charges.

Appellant released the files, each with a check and notation that the check was either a refund to the client or a premium to the carrier for new business. Appellant did not offer further explanation.

The Commonwealth explained that the release of the files with apparent refunds was not helpful to its investigation. The Commonwealth knew that the released files were in appellant's house, and there was probable cause for a search warrant to acquire the files anyway. The Commonwealth wanted appellant's explanation of all irregularities in the files so that investigation of hundreds of files could be minimized. When appellant did not provide the explanation, the Commonwealth reviewed the files and filed additional charges. There was sufficient evidence that appellant, not the Commonwealth, had violated the agreement. Therefore, the Commonwealth's obligation was discharged, and it was free to use the released files for additional charges.

■ Appellant also contends that the trial court erred when it denied his motion for change of venue without according him the opportunity to present more evidence on the petition. Appellant wanted to show that the media filmed the search of his office and were continually apprised by investigating officers of the progress of the proceedings, that investigating officers publicly announced that appellant was a forger and had misappropriated large sums of his clients' money, that insurance businessmen spoke disparagingly about appellant, and that the media coverage was extensive for this trial and for the earlier trial.

An accused's right to impartial jurors is guaranteed by due process of law. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Irwin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Veniremen can qualify as impartial finders of fact even though they have been exposed to extensive media coverage. In fact, veniremen with definite opinions of guilt or innocence may nevertheless qualify if they can shed their opinions and produce a verdict reflective solely of the evidence. *Murphy v. Florida, supra; Irwin v. Dowd, supra.*

Pretrial publicity alone does not preclude the empaneling of an impartial jury. In fact, it does not create a presumption that veniremen are not objective, *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978), unless it is pervasive, inflammatory and inculpaᴖory. *Commonwealth v. Fazier*, 471 Pa. 121, 369 A.2d 1224 (1977). It is the accused's burden to develop a presumption of prejudice and to prove the impossibility of empaneling an objective jury. *Commonwealth v. Rolison*, 473 Pa. 261, 374 A.2d 509 (1977); *cert. den.* 434 U.S. 871, 98 S.Ct. 215, 54 L.Ed.2d 150 (1977); *Commonwealth v. Hoss*, 469 Pa. 195, 364 A.2d 1335 (1976).

The trial court denied the motion for change of venue because appellant was given the "broadest possible latitude" in questioning veniremen, and the "vast majority" of the empaneled jurors was ignorant of the case and had no premature beliefs of guilt or innocence. Although this disposition was brief, appellant does not specify the allegedly prejudicial newspaper articles, telecasts or conduct and remarks of officials and insurance agents. Without more, we must defer to the judgment of the trial court in refusing a change of venue. *See Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976).

■ Finally, appellant argues that the evidence was insufficient to convict him beyond a reasonable doubt. The pertinent language from the statutory definition of fraud in processing insurance or in collecting claims is as follows:

> Any person ... who, for profit, gain, benefit, favor, or otherwise, ... prepares, ... any ... application, ... financial or other statement, or in any method or manner attempts to deceive, for the purpose of obtaining for ... others, any of the classes of insurance provided by this act; ... shall be guilty of a misdemeanor....

40 P.S. § 474.

According to appellant, he was a poor businessman at worst. His late submission of applications was the result of sloth and not an act of deception.

We disagree. There was sufficient evidence that appellant scurried to obtain insurance for Fuller as soon as he learned of the fire. Appellant backdated the policy application and altered his postage meter to give the appearance that he processed the application two days prior to the fire. Appellant received the initial premium three months prior to the fire, and the carrier received the application three days after the fire. These facts further support the finding that appellant was late in processing the application and did so only to cover his failure to procure the insurance earlier.

Judgment of sentence affirmed.

WIEAND, J., concurs in the result.