549 A.2d 909

COMMONWEALTH of Pennsylvania, Appellant,

v.

Timothy Scott REESE, Appellee.

Supreme Court of Pennsylvania.

Submitted April 15, 1988.

Decided Oct. 25, 1988.

Joseph C. Giebus, Asst. Dist. Atty., for appellant.

Frank W. Nocito, Wilkes–Barre, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The question presented in this case is whether the search of a jacket found on a chair in an apartment, belonging to a visitor (Appellee) to the apartment, was included within the scope of a warrant to search the apartment for drugs and other contraband.

Members of the Pennsylvania State Police, Drug Law Enforcement Division, obtained a search warrant for 93 Main Street, Apt. D in Luzerne, Pennsylvania. The warrant authorized the search of the premises and of the person of Tina Cosgrove an occupant of Apt. D, for cocaine, other

controlled substances and any paraphernalia and records associated with the distribution of controlled substances. The search warrant and affidavit also noted that Appellee, Timothy Scott Reese, was an associate of Cosgrove, had been observed in the apartment and had been a target of drug law enforcement investigations.[1]

The search of the Cosgrove residence was executed on March 22, 1985. Upon entering the apartment, the police found Cosgrove and Reese in the kitchen, read the warrant and began the search. Officer Carl Allen, who was assigned to watch Cosgrove and Reese, noticed a black leather jacket that was draped over a kitchen chair approximately four feet away from him. Without knowing who the jacket belonged to but suspecting that it may contain contraband, the officer searched the jacket and found "brass knuckles." Reese acknowledged ownership of the jacket and was arrested and charged with the possession of "brass knuckles" a prohibited offensive weapon under the Crimes Code. 18 Pa.C.S.A. § 908 (Purdons, 1983).

Prior to trial, Reese filed a motion to suppress evidence of the "brass knuckles" which was denied by the suppression court after a hearing. At trial the "brass knuckles" were admitted into evidence and the jury found Reese guilty of possessing a prohibited offensive weapon. He was sentenced to two and one-half months to twenty-three and one-half months imprisonment. The trial judge denied Reese's motions in arrest of judgment and for a new trial.

On appeal, the Superior Court vacated the judgment of sentence on the ground that the suppression court erred in not suppressing the "brass knuckles". That court held that search of Reese's jacket was not within the scope of the warrant because "the circumstances surrounding examination of the jacket all argue the conclusion that it belonged

1. The affidavit of probable cause stated in pertinent part:
   7. According to Confidential Informant, one Timothy Reese, an associate of Cosgrove has been observed in Apt. D at the 93 Main Street address. Reese is a known drug user and has been the target of law enforcement investigations of the Region VIII Strike Force at Kingston.

... to Reese" and could not have been "part of the general content of the room." *Commonwealth v. Reese*, 360 Pa.Super. 347, 520 A.2d 491 (1987). The Commonwealth petitioned this Court for allowance of appeal. We granted allocatur and we now reverse.

The Fourth Amendment of the United States Constitution requires that "no warrants shall issue, but upon probable cause ... and particularly describing the place to be searched and the persons or things to be seized". U.S. Const. amend IV. Similarly, the Pennsylvania Constitution states that "no warrant to search a place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause." Pa. Const. art. 1 § 8. The major purpose of the particularity requirement is to prevent general searches. This "requirement ensures that the search will be carefully tailored ... and will not take on the character of the wide-ranging exploratory searches the Framers [of the United States Constitution] intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 80 (1987).

This Court in *Commonwealth v. Reece*, 437 Pa. 422, 263 A.2d 463 (1970), held that a person's (visitor's) mere presence in a private residence in which a search warrant is being executed does not, without more, justify a search of that person under the authority of the search warrant. Additionally, in *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973), this Court held that the search of the personal property of a visitor to an apartment was not within the scope of a warrant to search the premises. In so holding this court stated:

> While recognizing the applicability of *Reece* to the present case, the Commonwealth has attempted to distinguish it. The only factual distinction is that the search in *Reece*, was of the guest's person and here the search was of the guest's effects. *There is no constitutional difference.*

*Id.*, 455 Pa. at 266, 312 A.2d at 34 (emphasis added). Since we now believe there is a constitutional difference between

the search of a visitor's person and the search of a visitor's personal property (property which is not on the person) located on premises where a search warrant is being executed, we overrule our decision in *Platou*.

■ Where a search warrant adequately describes the place to be searched and the persons and/or things to be seized the scope of the search "extends to the entire area in which the object of the search may be found" and properly includes the opening and inspection of containers and other receptacles where the object may be secreted. *United States v. Ross*, 456 U.S. 798, 820–821, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982). As the Court in *Ross* noted:

> ... a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search.

*Id.* at 821–822, 102 S.Ct. at 2171. Thus, the scope of a lawful search is "defined by the *object* of the search and the *places* in which there is probable cause to believe that it may be found." [2] *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), citing *Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (emphasis added).

■ Clearly, the police are not prohibited from searching a visitor's personal property (not on the person) located on premises in which a search warrant is being executed when that property is part of the general content of the premises and is a plausible repository for the object of the search. Otherwise, it would be impossible for police to effectively search a premises where visitors are present because they

[2] Just as the court in *Ross* noted that probable cause to believe "undocumented aliens are being transported in a van will not justify the search of a suitcase", *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982), we do not suggest that the police in this case could have properly searched Reese's jacket had they been looking for an elephant.

34

would not know which items, clothing and containers could be searched and which could not be searched.

In *Ross* the court recognized that "[w]hen a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, must give way to the interest in the prompt and efficient completion of the task at hand." *Id.* at 821–822, 102 S.Ct. at 2171. In this same vein it would be ineffective and unworkable to require police officers to make the distinction between which articles of clothing and personal property belong to the resident and which belong to the visitor before beginning the search. It would not be reasonable to require police officers executing a warrant to ask individuals located on the premises whether they own various items of personal property nor, would it be reasonable to expect an appropriate response were they required to do so.

Furthermore, in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) Justice William Rehnquist, writing a dissent for the United States Supreme Court, made a telling point when he stated that "an absolute bar to searching persons not named in the warrant would often allow a person to frustrate the search simply by placing the contraband in his pocket." *Id.* at 102, 100 S.Ct. at 348. And so too, visitors to the premises could frustrate the efforts of police by placing contraband among their unworn personal effects or by announcing ownership of various articles of clothing and containers in order to place those items beyond the scope of the warrant. We cannot sanction any rule that through fraud and gamesmanship erects barriers to the effective and legitimate execution of search warrants.

■ In this case Officer Allen testified that he noticed a black leather jacket hanging over the back of a chair about four feet away from where he was standing. He made a decision to search the jacket "because it's a common place where either contraband could be hidden or weapons." (Notes of Testimony at p. 39 Sept. 17, 1985). The jacket was not being worn by Reese and therefore, cannot be

characterized as an extension of his person so as to propel its search into a search of Reese's person. We therefore hold that the police were justified in searching Reese's jacket pursuant to the lawful search warrant since that property was part of the general content of the room and was a plausible repository for the object of the search.

Accordingly, we reverse the order of the Superior Court and remand the case to the Superior Court for disposition of the remaining issues preserved for appellate review.

NIX, C.J., files a dissenting opinion in which ZAPPALA, J., joins.

NIX, Chief Justice, dissenting.

The result reached by the majority is in direct contravention of *Commonwealth v. Platou,* 455 Pa. 258, 312 A.2d 29 (1973), where this Court held that a valid search warrant of the premises does not extend to the personal property of a visitor to the premises. I dissent because I am not convinced that there is any legitimate reason for overruling the holding in that case.

The United States Constitution protects people from unreasonable searches and seizures, and states that "no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. The Pennsylvania Constitution similarly provides that "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause...." Pa. Const. art. 1, § 8. In *Platou, supra,* we explained that

"[t]he requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

455 Pa. at 263–64, 312 A.2d at 33 (*quoting Marron v. United States*, 275 U.S. 192, 196 [48 S.Ct. 74, 76, 72 L.Ed. 231] (1927)).

Today, the majority overrules *Platou*, declaring that the scope of a search warrant properly includes the personal property of a visitor to the premises being searched. I cannot join that decision because I am not persuaded that *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), is an indication that the United States Supreme Court would permit a search warrant of premises to extend to a visitor's personal property. Reliance on *Ross* is clearly misplaced because the critical issue in that case concerned probable cause and not the particularity of the search as described in a warrant.

Moreover, it is significant to note that even though both the United States Constitution and the Pennsylvania Constitution require particularity and probable cause, the order in which those two requirements are addressed differs. While the United States Constitution addresses probable cause first, the Pennsylvania Constitution addresses *particularity* first. This strongly suggests that in our Commonwealth particularity and probable cause are given at least equal importance. It would be inconsistent with the Pennsylvania constitutional formulation to suggest that, because of the degree of probable cause present in a given factual setting, the standard of particularity required can be lessened. Probable cause and the degree of particularity are two separate and distinct factors that must be considered in a judgment as to whether or not the constitutional mandate has been complied with. The strength of one requirement does not erode the mandate of the other. Hence, the fact that the standard of probable cause may be eminently clear in a given case cannot justify a relaxation of the degree of particularity that is required. The particularity requirement is not merely an appendage. A reading of the analysis of the majority suggests that they fail to appreciate this critical point.

In light of the foregoing, I believe that *Commonwealth v. Platou, supra,* should be reaffirmed. To permit a police officer to extend the scope of a warrant to include property and persons not described in the warrant effectually takes away rights guaranteed to the citizens of this Commonwealth. Even if the personal property of a visitor located on premises being searched can properly be searched by a police officer under the United States Constitution, that type of conduct is clearly impermissible under the Pennsylvania Constitution.

I, therefore, dissent.

ZAPPALA, J., joins in this opinion.