555 A.2d 896

COMMONWEALTH of Pennsylvania, Appellee,

v.

Jack D. GROSSMAN, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 29, 1988.

Decided March 13, 1989.*

* This decision was considered and rendered prior to March 7, 1989.

Jack D. Grossman, pro se.

Thomas A. Crawford, Jr., Patricia Liptak–McGrail, Pittsburgh, for appellant.

John M. Dawson, Dist. Atty., John F. Spataro, Asst. Dist. Atty., Meadville, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

STOUT, Justice.

Jack D. Grossman appeals from the Superior Court's order affirming his conviction for thirteen counts of theft by failure to make required disposition of funds received. 358 Pa.Super. 625, 514 A.2d 198. 18 Pa.Cons.Stat.Ann. § 3927 (Purdon 1983). Appellant contends that the courts below erroneously failed to suppress evidence seized from Appellant's place of business. The issue presented in this

case is whether a warrant that authorized the seizure of "[a]ll insurance files, payment records, receipt records, copies of insurance applications and policies, [and] cancelled checks" is unconstitutional under Article 1 section 8 of the Pennsylvania Constitution because it failed to describe with particularity the precise files to be seized.

## I. Facts

Having heard the evidence, the Court of Common Pleas, aptly summarized the facts underlying the conviction:

> The defendant was the owner of a local insurance agency and had an extensive clientele of over 2,000 active cases. For a variety of reasons the defendant found himself in [a] precarious financial condition and one or more of his insurance companies had withdrawn his right to act as a binding agent to bind the company as their representative.... [T]he defendant fell into the habit of taking partial or full premiums for new or renewal insurance policies and then improperly using these funds to meet third party premium obligations to the company or to underwrite the expenses of his insurance business. Apparently, the defendant's operations drew sufficient complaints to alert the state insurance department, the police and the district attorney's office.

Trial Court slip op. at 2–3.

On March 4, 1983, the district attorney and police decided that the investigation had proceeded far enough. At 4:30 p.m., the district attorney, Mr. Dawson, and two police officers, Officer Young and Officer Loutzenhiser, arrived at the Jack D. Grossman Agency. Apparently out of fear that Appellant had both "got wind" of the investigation and of the imminent search and would therefore destroy evidence, N.T. Suppression Hrg. of 9–6–83 at 168, the police first 'secured' the premises. The police made clear to those present in the agency that Young was to stay and "not [to] let anybody take anything out or bring anything in." N.T. Suppression Hrg. of 7–13–83 at 32. Young "remained in the office and sat on a chair by the door" while Dawson and Loutzenhiser went to obtain the search warrant. *Id.* at

37–38. Young did nothing to "interfere with people coming and going in the business," *id.* at 44, although "[n]obody tried anything." *Id.* at 33.

Dawson and Loutzenhiser then obtained a search warrant on the basis of an affidavit detailing complaints filed with the Pennsylvania Insurance Commission by three of Appellant's clients. In that section of the warrant titled "Identify Items To Be Searched For And Seized (be as specific as possible)" was written: "All insurance files, payment records, receipt records, copies of insurance applications and policies, [and] cancelled checks."

After Dawson and Loutzenhiser returned with the search warrant, the police seized virtually every file and business record in the office. Officer Rossi, who aided in the search, testified that the police seized eight file drawers. *Id.* at 63. When asked, "Do you know if files other than those files concerning those three individuals [described in the affidavit] were taken?" Officer Rossi responded, "We took every file that was in the building that we could find." *Id.* at 64.[1]

## II. Procedural History

Appellant moved to suppress, arguing that the evidence seized from his office had been discovered as a result of a warrant that lacked the required specificity,[2] hence the

---

**1.** One agency employee testified that "[i]f there was anything left, it was blank applications, envelopes, some personal things that may have been on the desks ... [and the] office supplies that were blank...." N.T. Suppression Hrg. of 7–13–83 at 43. Another employee who was also present during the search testified that "a couple of files" containing claims that were being processed were left, but when asked whether "[j]ust about everything else was taken," she responded "[j]ust about, yeah." *Id.* at 60. In the record there is, moreover, a suggestion that some of the files that were seized were those of an unrelated business which Appellant ran from the same office. *Id.* at 77. Ironically, it appears that the three files described in the affidavit were not on the premises at the time of the search, but were turned over by Appellant at a later date. N.T. Suppression Hrg. of 9–6–83 at 139.

**2.** Appellant also challenged the initial "securing" of the premises. In *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) the United States Supreme Court confronted a similar issue: the admissibility of evidence seized pursuant to a valid search warrant after an initial illegal entry to secure the premises. *Id.* at 804, 104

search was unconstitutional under both Article 1 section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution.[3]

The Superior Court affirmed the denial of the motion to suppress. Adopting the reasoning of a Superior Court opinion in a related case arising from the same search, the Superior Court held:

> The affidavit did not limit the warrant to the three specified files. Those three files contained irregularities known to officials. They also provided probable cause that other files were irregular since appellant was known to have many clients. Other files were suspected because of the numerous complaints to the insurance commissioner concerning appellant's business tactics.

Super.Ct. slip op. at 9 (citing *Commonwealth v. Grossman*, 351 Pa.Super. 298, 305, 505 A.2d 991, 994–95 (1986)).[4]

Appellant petitioned this Court to review his conviction. We granted an appeal "limited to the question whether the breadth of the search warrant in this case requires the

S.Ct. at 3385. The Supreme Court held admissible drugs and other items not observed during the intial illegal entry and first discovered by the agents the next day, pursuant to a valid search warrant. *Id.* at 813, 104 S.Ct. at 3390. *Segura* declined to address the admissibility of evidence first observed during the initial entry. Even if we were to confront the admissibility of evidence first observed during the initial illegal entry, here there was no taint that carried over into the subsequent search. In *Segura,* the evidence was contraband, which by its nature is illegal on its face. Files, by contrast, do not carry any indicia of illegality on their face. The distinction between contraband and evidence that is criminally neutral suggests that Appellant's argument under *Segura* is without force. In any event, in light of our disposition of this case, we find it unnecessary to decide whether the initial securing of the premises was illegal, and if it was, whether that illegality would require the suppression of evidence subsequently seized pursuant to a valid warrant.

3. Before this Court, Appellant relies solely on article 1 section 8 of the Pennsylvania Constitution. Accordingly, our disposition rests exclusively on that provision.

4. Appellant was convicted in the related case for fraud in procuring insurance or in collecting claims. Although the conviction in that case may rest on evidence that flows from the warrant at issue here, we do not address any issues that may be presented by that related case.

suppression of some or all of the evidence seized by the police on their execution of the warrant." *Commonwealth v. Grossman,* 514 Pa. 377, 524 A.2d 896 (1987) (per curiam). We now reverse.

### III. The Constitutional Requirement of Specificity For Warrants

Article 1 section 8 of the Pennsylvania Constitution, like its federal counterpart, secures the right to be free from unreasonable searches:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or thing shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. 1 § 8. We need not recount the well-established origins of the right to be free from unreasonable police intrusions grounded in colonial opposition to the investigatory searches conducted pursuant to general warrants, the writs of assistance.[5] *Payton v. New York,* 445 U.S. 573, 583–84, 100 S.Ct. 1371, 1378–79, 63 L.Ed.2d 639 (1980); *Harris v. United States,* 331 U.S. 145, 157–62, 67 S.Ct. 1098, 1104–07, 91 L.Ed. 1399 (1947) (Frankfurter, J., dissenting); *Davis v. United States,* 328 U.S. 582, 603–05, 66 S.Ct. 1256, 1266–67, 90 L.Ed. 1453 (1946) (Frankfurter,

---

**5.** We would note that the warrant here at issue is remarkably similar in its reach to that held illegal and void in the landmark English libel case of *Entick v. Carrington,* 19 How.St.Tr. 1029 (1765), in which Lord Camden wrote:

> Nor is there any pretence to say, that the word 'papers' here mentioned ought in point of law to be restrained to the libellous papers only. The word is general, and there is nothing in the warrant to confine it; nay, I am able to affirm, that it has been upon a late occasion executed in its utmost latitude: for in the recent case of Wilkes against Wood, when the messengers hesitated about taking all the manuscripts, and sent to the secretary of state for more express orders for that purpose, the answer was, 'that all must be taken, manuscripts and all.' Accordingly, all was taken, and Mr. Wilkes's private pocket-book filled up the mouth of the sack.

*Id.* at 1065.

J., dissenting); *Boyd v. United States*, 116 U.S. 616, 625, 6 S.Ct. 524, 529, 29 L.Ed. 746 (1886). *See* Amsterdam, *Perspectives On The Fourth Amendment*, 58 Minn.L.Rev. 349, 396–97 (1974).

■ The framers of the Pennsylvania Constitution thought the right to be free from unrestricted police intrusions so critical that they secured the right for future generations by including it in the original Constitution of 1776. The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be...." The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment,[6] which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible. *See Commonwealth v. Reese*, 520 Pa. 29, 31–32, 549 A.2d 909, 910 (1988) (Nix, C.J., dissenting) (Pennsylvania particularity requirement more stringent than that of the Fourth Amendment because Pennsylvania particularity requirement precedes probable cause requirement).

It is settled Fourth Amendment jurisprudence that a warrant must specifically list the things to be seized. *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed.

---

**6.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV.

231 (1927). The more rigorous Pennsylvania constitutional provision requires no less.

 Although some courts have treated overbreadth and ambiguity as distinct defects in warrants, *e.g. Commonwealth v. Santner,* 308 Pa.Super. 67, 68 n. 2, 454 A.2d 24, 25 n. 2 (1982), both doctrines diagnose symptoms of the same disease: a warrant whose description does not describe as nearly as may be those items for which there is probable cause. Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible.

## IV. The Warrant Here At Issue

 It is clear that the warrant here at issue cannot survive constitutional scrutiny. Notwithstanding the contrary conclusion reached by the Superior Court, the affidavit was limited to the files of only three of Appellant's clients: Mr. Paul Dorman, Dr. Thomas Watson, and Mr. Gary Jones. After detailing the irregularities in these files, the affidavit concludes: "[w]herefore, affiant believes there is sufficient probable cause to believe [Appellant] ... fraudulently executed various documents in connection with an ongoing scheme to defraud insurance applicants." This language must be read in the context of the entire affidavit. The "wherefore" clause refers back to the three client files discussed in the body of the affidavit. Although the Superior Court may have been correct to observe that the police may have suspected that other clients were being defrauded, the affidavit that was placed before the issuing judge did not include any such additional information, and "[t]he issuing authority, in determining whether probable cause

has been established, may not consider any evidence outside the affidavits." Pa.R.Crim.P. 2003(a).

We conclude that while probable cause existed for the three named files [7] there was not probable cause as to the other files in Appellant's offices. Appellant had over 2,000 clients. That three clients, 0.15% of Appellant's clients, had filed complaints with the Pennsylvania Insurance Commission cannot be said to lead a reasonable person to conclude that probable cause existed to seize, and subsequently to search, the files of all 2,000 of Appellant's clients. *See Santner, supra*, 308 Pa.Superior Ct. at 75, 454 A.2d at 28 (relying on federal cases). *See also Commonwealth v. Jones*, 506 Pa. 262, 269, 484 A.2d 1383, 1387 (1984); *Commonwealth v. Davis*, 466 Pa. 102, 109, 351 A.2d 642, 645 (1976). In short, there was probable cause to search only for those three files described in the affidavit.

Therefore, we hold that the warrant authorizing the seizure of "all files" was unconstitutionally overbroad in its failure to describe as specifically as was reasonably possible the three files described in the affidavit for which there was probable cause. All evidence seized as a result of the deficient warrant should have been suppressed.

Accordingly, the decisions of the courts below are reversed and a new trial is granted.[8]

---

**7.** Appellant, in his brief implicitly, and properly, concedes there was probable cause as to the three files described in the affidavit. Appellant's Brief at 7–8.

**8.** Appellant contends that "all but two counts were totally based" on evidence obtained as a result of the execution of the search warrant. Appellant's Brief at 8–9. Appellant further contends that the remaining two counts, those relating to Watson and Jones, were "based only in part" on the illegally seized evidence. The Commonwealth claims only that the convictions at Nos. 1983–294A counts three and four, relating to Watson and Jones, were *not* the result of evidence seized incident to the search. Commonwealth's Brief at 5 n. 1. We must therefore assume that all evidence introduced in connection with the nine convictions not related to Watson and Jones was illegally obtained. Having reviewed the record, we must conclude that the illegally obtained evidence tainted the entire trial. Accordingly, all the judgments of sentence are vacated. That, however, does not end the inquiry. On the record before us, we are unable to determine which files and records were seized during the illegal search, which

ZAPPALA, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., files a dissenting opinion in which PAPADAKOS, J., joins.

McDERMOTT, Justice, dissenting.

I dissent and would join the analysis of the Superior Court. *See Commonwealth v. Grossman,* 351 Pa.Super. 298, 505 A.2d 991 (1986).

PAPADAKOS, J., joins this dissenting opinion.

evidence, both physical and testimonial, was the poisonous fruit of the illegal search, *see Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963), and which evidence would have been inevitably discovered as a result of an investigation already commenced at the time of the search. *See Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). On remand, the trial court will have to make these determinations.

* This decision was considered and rendered prior to March 7, 1989.