## Commonwealth v. Jennings

*Albert C. Ondrey, first assistant district attorney,* for Commonwealth.

*Arthur D. Agnellino,* for defendant.

MOTT, J., August 15, 2005—Before the court are the remaining portions of the defendant's omnibus pretrial motions. This case arises out of the New York State Police's search for Brandon Hall, who was a suspect in a shooting that occurred in Barton, New York. Hall's vehicle was found outside of the defendant's residence here in Pennsylvania on February 21, 2005. This caused the New York State Troopers to seek the assistance of Pennsylvania police officers in searching the defendant's house for Hall and his weapons. Shortly after the police arrived outside the defendant's residence, the defendant himself arrived. The defendant gave the police permission to search his house for Hall. During that initial search, the police observed in plain view some of Hall's weapons and they also observed drug paraphernalia. As

a result, the police went to a Magisterial District Judge and obtained a search warrant to search the house for firearms, ammunition, drugs and drug paraphernalia. During the second search, which was authorized by the search warrant, they seized such items.

As a result of the foregoing, the defendant is charged with one count of possession of a controlled substance, a violation of section 780-113(a)(16) of the Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, No. 64 §1 et seq., *as amended,* 35 P.S. §780-101 et seq., 35 P.S. §780-113(a)(16), one count of possession with intent to deliver or manufacture, a violation of section 13(a)(30) of the Act. 35 P.S. §780-113(a)(30), and five counts of possession of drug paraphernalia, violations of section 13(a)(32) of the Act, 35 P.S. §780-113(a)(32).

The defendant first asserts that the Commonwealth should be compelled to produce the tapes of the alleged radio conversations between the police and the police station that occurred immediately prior to the initial search of the defendant's house. The defendant asserts that those conversations may demonstrate that the police knew of the presence of the weapons in his house because they may have already impermissibly entered the home and seen them. In response, the Commonwealth offered the testimony of Officer James Tappan to indicate that no such radio conversations took place. Instead, Officer Tappan testified that New York State Troopers came to his office and asked for his assistance in searching the house where they believed Brandon Hall had fled. N.T. 7/19/05, pp. 6-7. Therefore, there is nothing for the Commonwealth to produce and the defendant will not

be allowed to go on a fishing expedition based on his mere conjecture.

The defendant also alleges that the initial search conducted by the police officers is not valid because he did not consent to that search of his house. However, this issue was not raised in the defendant's motion. In fact, in paragraph 11 of his motion, the defendant admits that he gave permission for that search of his house.

The defendant next asserts that the affidavit of probable cause was too vague to support the issuance of a warrant to search for drug paraphernalia, drugs, and marijuana. Initially, we are mindful that the Fourth Amendment of the United States Constitution and Article 1, Section 8, of the Pennsylvania Constitution protects against unreasonable searches and seizures. In regard to a search warrant, the Pennsylvania Supreme Court in *Commonwealth v. Grossman,* 521 Pa. 290, 296, 555 A.2d 896, 899 (1989), states that "a warrant must describe the items [to be seized] as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment [of the United States Constitution], which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible." (footnote omitted)

Furthermore, "in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for

which there was probable cause and the description in the warrant requires suppression." *Id.* at 297, 555 A.2d at 900.

Moreover, in *Commonwealth v. Coleman,* 574 Pa. 261, 268, 830 A.2d 554, 560 (2003), the Pennsylvania Supreme Court states that "[i]n analyzing whether a warrant was supported by probable cause, judicial review is confined to the four corners of the affidavit."

In this case, relative to the request to search for drugs, the affiant says in the affidavit of probable cause attached to the search warrant only that "[w]hile searching the home for Hall, Officer Savercool found drug paraphernalia on the first and second floors in plain view." The affidavit does not state specifically what the items were that the officer allegedly saw. It does not state specifically where or how the officer saw the alleged paraphernalia. It does not state how the officer knew the items were drug paraphernalia. As a result, the Magisterial District Judge did not have any way to determine what the items were that the officer saw, whether they really were in plain view, and whether they really were contraband classified as drug paraphernalia. Therefore, the search warrant was, in fact, invalid in authorizing a search for drugs.

Nevertheless, the search warrant was completely valid in authorizing a search for firearms and ammunition. The affidavit clearly provides probable cause for such a search. In addition, all of the drug items that were seized were in plain view once the officers were validly searching the area for Hall's weapons and ammunition. In *Commonwealth v. Lake,* no. 2445 C.D. 2004, 2005 WL

1538100 at *1 (Pa. Commw. July 1, 2005), the court states that the essential elements of the plain view doctrine are that "the evidence must be seen from a lawful vantage point" and that "it must be immediately apparent to the viewer that the object observed is incriminating evidence." In this case, the water bong marijuana pipe was in plain view because it was seen underneath a coffee table. N.T. 7/19/05 p. 29. The canning jar of marijuana seeds, the glass jar containing several bags of marijuana seeds, a small, tin box containing marijuana seeds, and a tin can containing two pipes were also in plain view because they were found in a closet. N.T. 7/19/05 pp. 29-31. The inside of a closet is a likely hiding space for weapons or ammunition. Furthermore, rounds of ammunition could easily be hidden inside of a jar, a tin box, or almost anywhere in the home. As a result, all the drug items were seen from a lawful vantage point because the officers were properly searching for Hall's weapons and ammunition. Thus, all these items were properly seized under the plain view doctrine. In addition, all of the items were obviously contraband and would have inevitably been discovered in the valid search for weapons and ammunition. See *Commonwealth v. Ingram,* 814 A.2d 264, 272 (Pa. Super. 2002) (stating that, if the prosecution can establish that evidence would have inevitably been discovered by lawful means, then the evidence should be received).

The defendant next alleges that the statement he made to the police officers that he intended to grow the marijuana seeds should be suppressed because the defendant was in custody at the time. Specifically, the defendant asserts that he should have been given *Miranda* warn-

ings by the police. However, *Miranda* warnings are not required unless a subject is both in custody and interrogated. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). In *Commonwealth v. Chacko,* 500 Pa. 571, 577, 459 A.2d 311, 314 (1983), the Pennsylvania Supreme Court states that *Miranda* warnings are necessary if the suspect "is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation." Additionally, the court in *Commonwealth v. Mannion,* 725 A.2d 196, 200 (Pa. Super. 1999), instructs that "[t]he standard for determining whether an encounter with the police is deemed 'custodial' or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated." The court continues and defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." *Id.* Also, the court states that the applicable factors under the totality of the circumstances test include "the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions." *Id.*

Here, the police officers were at the defendant's residence because they were searching for Brandon Hall who

was wanted in regard to a shooting incident in Barton, New York, and they found Hall's vehicle parked outside of the defendant's residence. The search of the defendant's residence lasted for about four hours. Throughout the duration of the search, however, the officers did not detain the defendant, they never told the defendant that he was not free to leave, and they did not place the defendant under arrest after seizing the marijuana and accompanying paraphernalia. N.T. 7/19/05, pp. 12, 49. In fact, the officers left the premises after completing their search without arresting the defendant and the defendant was never transported anywhere. N.T. 7/19/05, p. 49. Although the defendant was accompanied by a police officer while he was in the house, this is an understandable safety precaution because the police were searching for an armed suspect who was allegedly involved in a shooting. Furthermore, the officers did not use any restraints on, or show, use, or threaten force towards the defendant. As a result, based upon the totality of the circumstances, we cannot conclude that the defendant was in custody at the time he stated that he intended to grow the marijuana seeds. Therefore, the defendant's motion will be denied.

Accordingly, we enter the following:

## ORDER

And now, August 15, 2005, in accord with the memorandum opinion filed this date, the defendant's omnibus pretrial motion is denied.