# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania : 
  : 
v. : No. 366 C.D. 2017
  : Submitted: April 12, 2018
Dennis Love, : 
                     Appellant : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION BY JUDGE BROBSON**        **FILED:  May 10, 2018**

        Dennis Love (Love) appeals from the judgment of sentence imposed by the Court of Common Pleas of the 41st Judicial District, Juniata County Branch (trial court), dated February 23, 2017, which sentenced Love to pay fines, costs, and restitution stemming from violations of Section 2307 of the Game and Wildlife Code (Code).[1]  For the reasons set forth below, we now reverse an earlier order of the trial court, dated November 2, 2016, denying a motion to suppress; vacate the trial court's judgment of sentence; and remand the matter to the trial court for further proceedings.

        On November 16, 2015, Pennsylvania Game Commission (Commission) Wildlife Conservation Officer Stephen S. Hower (Hower) submitted an application for a search warrant to a Magisterial District Judge (MDJ).  The warrant application sought authorization to search Love's property for "[p]arts of unlawfully taken or possessed game or wildlife."  (Reproduced Record

---

[1] 34 Pa. C.S. § 2307.

(R.R.) at 38a.) In support of the application, Hower submitted an affidavit of probable cause which provided:

> On 11/11/[20]15 at approximately 0100 hours, Pennsylvania Wildlife Conservation Officers were patrolling by aircraft over Juniata County when they observed a spotlight being operated from a vehicle in a field near East Waterford. Since it is unlawful to use an artificial light to search for game or wildlife after 11 PM, the officers watched the vehicle and reported the activity to officers on the ground. Deputy Wildlife Conservation Officer [(DWCO)] Terry Clevenger along with two other officers responded to 9853 Route 75 S, East Waterford where the officers in the aircraft had reported seeing the vehicle stop.
>
> Upon their arrival DWCO Clevenger found the vehicle, a white Dodge truck, license number YHM3257, with what appeared to be blood in the bed and on the tail gate. He spoke to the home owner, Dennis R. Love, who explained that the blood was from a deer that he had killed on the evening of Thursday, November 12 "for crop damage[.]"[] When asked by Clevenger whether he had reported killing this deer to the Game Commission, Love annswered [sic] "No[.]"[] Clevenger asked for the head and hide of the deer and was told by Love that it had been disposed of. Love told the officers that the meat from this deer was "Wrapped and in the freezer[.]"[]
>
> Since the killing of this deer had not been reported to the Commission as required, the possession of its parts would be in violation of the Game and Wildlife Code.[2]

(*Id.* at 39a.)

On November 16, 2015, an MDJ authorized the warrant, and the Commission executed the search. The search revealed not only the deer hide and meat but also a myriad of other assorted game carcasses and meat. (*Id.* at 32a-33a.) As a result of this search, the Commission filed twenty-four summary citations

---

[2] 34 Pa. C.S. §§ 101-2965.

against Love, which were comprised of twenty-two counts of Unlawful Taking or Possession of Game or Wildlife in violation of 34 Pa. C.S. § 2307(a) and two counts of Unlawful Acts Concerning Taking of Furbearers in violation of 34 Pa. C.S. § 2361(a)(2). (*Id.* at 24a-29a.) Love pleaded not guilty to all counts. Following a consolidated summary trial held on March 8, 2016, the MDJ found Love guilty of all counts.[3]

On April 7, 2016, Love filed a notice of appeal from his twenty-four summary offenses, and the trial court scheduled a *de novo* hearing. (*Id.* at 23a-29a.) Prior to the hearing date, Love filed a motion seeking to suppress the evidence obtained during the search. (*Id.* at 32a-39a.) In so doing, Love argued that he had a reasonable expectation of privacy at all places from which the evidence was seized. (*Id.*) Further, Love challenged the warrant as overbroad and lacking specificity. (*Id.*) Following a motion hearing, the trial court denied Love's suppression motion by order dated November 2, 2016. (*Id.* at 70a.)

The trial court conducted a *de novo* summary appeal hearing and found Love guilty of all counts. (*Id.* at 306a.) By order dated February 23, 2017, the trial court sentenced Love to fines, costs, and restitution on the twenty-four summary offenses. (*Id.* at 124a-25a.) Love then filed the instant appeal.

On appeal,[4] Love argues that the trial court erred in denying his motion to suppress. Love challenges the search warrant as unconstitutionally overbroad and

---

[3] At the time of the summary trial, the Commonwealth amended the two counts of Unlawful Acts Concerning Taking of Furbearers to two counts of Unlawful Taking or Possession of Game or Wildlife. (R.R. at 52a.) As a result, the MDJ found Love guilty of twenty-four counts of Unlawful Taking or Possession of Game or Wildlife instead of the originally charged twenty-two counts. (*Id.* at 3a-6a.)

[4] Our review of a trial court's determination on appeal from a summary conviction is limited to determining whether the trial court's findings of fact are supported by competent

3

lacking the requisite degree of specificity. Love argues that probable cause only existed to perform a search for parts of a deer, whereas the search warrant authorized a search for parts of *any* game or wildlife, thus resulting in a fishing expedition.

A search warrant cannot be used as a general investigatory tool to uncover evidence of a crime. *In re Casale*, 517 A.2d 1260, 1263 (Pa. 1986). Nor may a warrant be so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize, which would result in the general "rummaging" banned by the Fourth Amendment. *See Cmwlth. v. Santner*, 454 A.2d 24, 25 n.2 (Pa. Super. 1982), *cert. denied*, 468 U.S. 1217 (1984) (citing *Marron v. United States*, 275 U.S. 192, 195 (1927)). The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be." Pa. Const. art 1, § 8. The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. *See Cmwlth. v. Reese*, 549 A.2d 909, 910 (Pa. 1988). This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description.[5]

A warrant is defective when its explanatory narrative does not describe as clearly as possible those items for which probable cause exists to search. *Cmwlth.*

---

evidence or whether the trial court erred as a matter of law. *Cmwlth. v. Whiteford*, 884 A.2d 364, 366 n.2 (Pa. Cmwlth. 2005), *appeal denied*, 902 A.2d 1243 (Pa. 2006).

[5] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

4

*v. Grossman*, 555 A.2d 896, 899-900 (Pa. 1989). Warrants should be read "in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." Pa. R. Crim. P. 205 (cmt.). In determining whether a warrant is defective on such grounds, our Supreme Court has opined:

> Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible.

*Grossman*, 555 A.2d at 900.

In reviewing whether probable cause existed to support a search warrant, the court's determination must be based on the facts described within the four corners of the supporting affidavit. *See Cmwlth. v. Housman*, 986 A.2d 822, 843 (Pa. 2009). As stated by our Supreme Court:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing] that probable cause existed."

*Cmwlth. v. Gray*, 503 A.2d 921, 925 (Pa. 1985) (internal citations omitted).

5

With the foregoing in mind, the issue before this Court is whether there is an unreasonable discrepancy between the items for which probable cause existed and the description in the warrant.

In *Grossman*, an affidavit for a search warrant provided that Grossman, the owner of a local insurance agency, fraudulently executed documents in an attempt to defraud three insurance applicants. *Grossman*, 555 A.2d at 897, 900. The search warrant, however, authorized the search and seizure of "[a]ll insurance files, payment records, receipt records, copies of insurance applications and policies, [and] cancelled checks." *Id.* at 897. This led to police confiscating every file in Grossman's place of business. *Id.* at 898. Grossman challenged the specificity of the warrant. Our Supreme Court, in concluding that an unreasonable discrepancy existed between the affidavit and search warrant, opined:

> It is clear that the warrant here at issue cannot survive constitutional scrutiny. Notwithstanding the contrary conclusion reached by the Superior Court, the affidavit was limited to the files of only three of [Grossman]'s clients . . . . After detailing the irregularities in these files, the affidavit concludes: "[w]herefore, affiant believes there is sufficient probable cause to believe [Grossman] . . . fraudulently executed various documents in connection with an ongoing scheme to defraud insurance applicants." This language must be read in the context of the entire affidavit. The "wherefore" clause refers back to the three client files discussed in the body of the affidavit. *Although the Superior Court may have been correct to observe that the police may have suspected that other clients were being defrauded, the affidavit that was placed before the issuing judge did not include any such additional information*, and "[t]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits."
>
> We conclude that while probable cause existed for the three named files there was not probable cause as to the other files in [Grossman]'s offices. [Grossman] had over

6

> 2,000 clients. That three clients, 0.15% of [Grossman]'s clients, had filed complaints with the Pennsylvania Insurance Commission cannot be said to lead a reasonable person to conclude that probable cause existed to seize, and subsequently to search, the files of all 2,000 of [Grossman]'s clients. In short, there was probable cause to search only for those three files described in the affidavit.

*Id.* at 900 (emphasis added) (internal citations omitted).

Here, just as in *Grossman*, the mere suspicion that Love harvested other game or wildlife beyond the deer in question does not negate the fact that the affidavit submitted to the MDJ offered no facts to establish probable cause of such activity. The affidavit clearly established probable cause to search for the deer. Love does not dispute this fact. The affidavit, however, makes no assertions whatsoever as to Love harvesting any other game, merely that "the killing of *this deer* had not been reported to the Commission as required, [and] the *possession of its parts* would be in violation of the [Code]." (R.R. at 39a (emphasis added).)

The Commonwealth argues that, at the time of the affidavit's submission, the Commission could only know that Love harvested *something*, but could not identify precisely what. (Appellee's Br. at 15.) In support of this assertion, the Commonwealth notes that (1) the investigating officer had no way of developing a forensic certainty that the blood in Love's truck bed belonged to a deer, and (2) it is not uncommon for suspects to be untruthful to law enforcement. We decline to entertain either notion. If the investigating officer suspected that Love was harvesting other wildlife or being untruthful, then the investigating officer should have included facts to support such an assertion in the affidavit. *See Grossman*, 555 A.2d at 900. Given the facts averred in the affidavit, we conclude that there is

7

an unreasonable discrepancy between the items for which probable cause existed and the description in the warrant, rendering the search warrant invalid.

Accordingly, we reverse the trial court's November 2, 2016 order denying Love's motion to suppress, vacate the trial court's judgment of sentence, and remand the matter to the trial court for further proceedings.[6]

_____

P. KEVIN BROBSON, Judge

---

[6] The record does not make clear how many of Love's twenty-four summary offenses are affected because of this ruling. Love appears to acknowledge that the charge stemming from his admission to the unreported harvesting of one deer may still be valid, whereas the Commonwealth has advanced no argument on this matter. On the record before us, we are unable to determine which offenses were the product of the invalid warrant, and which offenses would be unaffected notwithstanding the warrant's invalidation. On remand, the trial court will have to make these determinations.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania  :
           :
    v.       :  No. 366 C.D. 2017
           :
Dennis Love,       :
      Appellant  :

## **O R D E R**

AND NOW, this 10th day of May, 2018, the Court of Common Pleas of the 41st Judicial District, Juniata County Branch's (trial court), November 2, 2016 order, denying Dennis Love's motion to suppress, is REVERSED; the trial court's February 23, 2017 judgment of sentence is VACATED; and this matter is REMANDED for further proceedings.

Jurisdiction relinquished.

           _____
           P. KEVIN BROBSON, Judge