**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 25 WAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered October 18, |
| | : | 2018 at No. 1082 WDA 2017, |
| v. | : | affirming the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered June 27, |
| LAVELLE JOHNSON, | : | 2017 at No. CP-02-CR-0000765- |
| | : | 2015. |
| Appellant | : | |
| | : | SUBMITTED:  April 16, 2020 |


## OPINION ANNOUNCING THE JUDGMENT OF THE COURT


**JUSTICE DOUGHERTY**                                     **DECIDED:  OCTOBER 21, 2020**

We recently explained that, where law enforcement seeks to search a cell phone seized incident to arrest, the applicable rule is "exceedingly simple: . . . get a warrant." *Commonwealth v. Fulton*, 179 A.3d 475, 489 (Pa. 2018); *accord Riley v. California*, 573 U.S. 373, 403 (2014).  We granted discretionary review in this case of first impression to consider an issue that is not so simple:  the permissible scope of such a warrant, under Article I, Section 8 of the Pennsylvania Constitution, to search an individual's cell phone for evidence relating to illegal narcotics activity and firearms possession.  But, as it turns out, our task in this case is less complicated than the question suggests, because we conclude the search warrant was so lacking in probable cause that it failed to justify **any** search of appellant's cell phone.  We thus reverse and remand.

The nature of the present challenge by appellant Lavelle Johnson necessarily restricts our review to only those documents that informed the issuing authority's decision to authorize the search warrant. *See, e.g.*, Pa.R.Crim.P. 203(B) ("No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority . . . [and t]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits."). We therefore set forth the relevant aspects of the application for search warrant and its accompanying affidavit of probable cause, starting with the latter. According to the affidavit, a probable cause belief to search appellant's cell phone was based upon the following facts and circumstances:

> Your affiants are members of the Pittsburgh Bureau of Police currently assigned as patrol officers in Zone 1. Affiant Black has been a police officer with the City of Pittsburgh since July of 2011 and assigned to Zone 1 since June 2012. Affiant Black has made numerous arrests for firearms and controlled substances.
>
> Affiant Marabello has been a police officer since 1991 and a police officer for the City of Pittsburgh since May of 2000. Affiant Marabello has been assigned to the Narcotics and Vice Unit since September of 2006 to November of 2013. Affiant Marabello has been involved in over three hundred undercover purchases of illegal narcotics with your affiant purchasing drugs hand to hand from drug dealers. Affiant Marabello has also been involved in, or supervised hundreds of controlled purchases of illegal narcotics. Affiant Marabello has extensively interviewed hundreds of individuals involved in selling or using illegal narcotics. These individuals have provided your affiants with detailed information concerning how illegal narcotics are sold and used. In addition to standard state mandated police training your affiant has received additional training in narcotics including DEA Narcotics Investigation Course, PA Attorney General's Top Gun Narcotics Investigation Course, as well as other courses related to narcotics investigations. Affiant Marabello has worked jointly in narcotics investigations with other agencies including the DEA, FBI, Pennsylvania State Attorney's General Office, and the Allegheny County Police Narcotic's Unit.
>
> This search warrant is to obtain all information stored in the body of these cellular phones: Exhibit B- Apple iPhone Cellular phone, Model A1586,

(FCC ID:BCG-E2816A); (IMEI:354432060723845), black and gray in color. Samsung flip cellular phone, (Model SPH-M270), black in color, but not limited to the cell phone number that is connected to these cell phones and the security numbers used to secure the phones, direct connect numbers, carrier IP number, voice mail, text messages (SMS) and the phone numbers associated with these cell phone numbers, picture(s) messages (MMS) and the phone numbers associated with those pictures, any and all internet history and IP address, and phone book and/or contact list and listed incoming and all missed calls, i.e. history in this cell phone. Your Affiant has based the facts for this search warrant on the following:

On 11/23/14 at 0243 hours your affiants received a 911 dispatch call where the complainant wished to remain anonymous. The call stated that shots were fired inside of 2143 Rhine St. Apt 2D. Affiants went to this apartment.

Affiants approached the front door of Apt 2D and smelled a strong odor of burning marijuana coming from inside of the apartment and could hear individuals moving inside of Apt 2D. Affiants knocked and announced their presence fearing someone might be shot or injured inside. Affiants continued to knock for several minutes with no response. A female later identified as Jemera Hibbler eventually opened the apartment door.

Affiants did a protective sweep of the apartment and detained five (5) individuals. Eli Herring III (DOB 02/25/90) Lavelle Johnson (DOB 11/05/1984) Kent Morton (DOB 03/26/88) Jaquayla Kendrick (DOB 04/28/95) Jemera Hibbler (DOB 10/09/86)

During the protective sweep Officers observed in plain view two (2) bricks of heroin on a shelf. For officer safety, officers did a cursory search for firearms. Officers recovered three stolen firearms hidden together above the apartment's hot water tank. The five detained individuals were then placed under arrest. Officers secured the apartment and obtained a search warrant.

Search incident to arrest Officers recovered two cell phones from Lavelle Johnson and two cell phones from Kent Morton.

The Apartment Search warrant was signed on 11/23/14 at 0600 hours by District Justice Zoller. Officers executed the warrant at approximately 0610 hours. Officers conducted a systematic search of the residence. Officers recovered an additional 717 stamp bags of heroin and three cell phones from the living room area.

From previous drug investigations your affiants have been involved with, your Affiants have become aware that persons involved in the trafficking of controlled substances regularly use cellular telephones to accomplish their

trafficking activities. These persons additionally maintain within their cellular telephones, information that includes the telephone numbers of persons to whom they distribute controlled substances to [sic], the telephone numbers of persons from whom they obtain controlled substances to distribute, abbreviations or acronyms for the persons to whom they distribute controlled substances to [sic], the persons from whom they obtain controlled substances to distribute, and pictures of controlled substances, firearms, and quantities of monies.

As a result of the foregoing, your Affiant[s] respectfully request a search warrant issued for the black and gray Apple iPhone cellular phone and the black Samsung flip cellular telephone listed above, as well as any and all electronic and/or digital data contained within the cellular telephone or its storage medias/memory cards, such as incoming/outgoing calls, call logs, emails, personal calendars, cellular internet usage, wireless internet usage, GPS data, contact information, text messages, voice mails, notes, photographic images, IP addresses, contact information, and voice recordings whether or not the electronic and/or digital data has been erased, hidden, password protected or encrypted.

Affidavit of Probable Cause, 3/31/2015, at 1-2.

The affidavit reflects that police officers responded to an anonymous 911 call reporting shots fired in a particular apartment in Pittsburgh during the early morning hours of November 23, 2014. They approached the apartment and smelled burning marijuana coming from inside and could hear people moving. Fearing someone might be shot or injured, the officers knocked and announced their presence but received no answer for several minutes. Then, a woman answered and the officers detained her and four other individuals following a protective sweep, during which they also discovered in plain view two bricks of heroin on a shelf and three stolen firearms hidden together above a hot water tank. All five individuals were placed under arrest and, during a search incident to arrest, two cell phones each were recovered from appellant and another man. After the officers obtained a warrant to search the apartment several hours later, they executed it and discovered an additional 717 stamp bags of heroin and three more cell phones from the living room. And, on March 31, 2015, over four months after the initial search and discovery of this sizable stash of drugs and firearms in the apartment, the officers sought

and obtained a search warrant for appellant's two cell phones. Specifically, the search warrant application detailed the items to be searched for and the description of the location of the search as follows:

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED:**

Digital Media and electronic evidence of the possession of illegal firearms, and the distribution and possession of heroin which is stored within the body of the cellular phone, specifically but not limited to the incoming/outgoing calls, call logs, emails, personal calendars, cellular internet usage, wireless internet usage, GPS data, contact information, text messages, voice mails, notes, photographic images, IP addresses, contact information, and voice recordings whether or not the electronic and/or digital data has been erased, hidden, password protected or encrypted.

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSONS TO BE SEARCHED:**

Apple iPhone cellular phone, Model A1586, black and gray in color, marked with the followings numbers on the back of the phone: (FCC ID:BCG-E2816A), (IC:579C-E26816A), (IMEI:354432060723845)

Samsung flip cellular phone, Model SPH-M270, black in color, marked with the following number on the back of the phone under the battery: (FCC ID:A3LSPHM270)

Application for Search Warrant, 3/31/2015, at 1.

Naturally, one might pause at this juncture to wonder, "What do appellant's cell phones have to do with the drugs and firearms in the apartment?" But before we explore that question further, we will proceed briefly to review how the lower courts dealt with appellant's challenges to the search warrant.

On August 31, 2015, appellant filed an omnibus pretrial motion seeking, *inter alia*, the suppression of all evidence recovered from the apartment. After that motion was denied and additional discovery was turned over by the Commonwealth — namely, text messages recovered from appellant's Samsung cell phone which "reference[d] stamp bags of heroin which had the same stamp as stamp bags recovered from the apartment[,]"

N.T. Pretrial Motion Hearing, 12/15/2015, at 19 — appellant filed a supplemental omnibus motion on May 10, 2016, wherein he sought the exclusion of all evidence seized from his Samsung cell phone, on the grounds that it was obtained in violation of his rights under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.[1]

More to the point, appellant argued that "[t]he affidavit filed in support of the search warrant did not contain probable cause that evidence of a crime would be located within [his] cell phones." Supplemental Omnibus Pretrial Motion, 5/10/2016, at ¶16. According to appellant, the information provided within the four corners of the affidavit "confirms that [he] was nothing but a guest at the time the police entered and searched the residence[,]" and "[m]erely being present in a home where drugs are found does not give rise to probable cause for the government to search and examine the cell phones of those present." *Id.* at ¶¶16-17. Further, it seemed apparent, at least from appellant's perspective, that the government was uncertain as to whom the drugs and guns discovered in the apartment belonged, and the belated request to search appellant's cell phones was an improper attempt "to see who **might** be connected to the unlawful activity." *Id.* at ¶22 (capitalization omitted and emphasis added). In this regard, appellant asserted that "[j]ust because the government cannot figure out who the drugs belong to doesn't give it license to invade an individual's privacy in their attempt to lay blame or assess criminal responsibility." *Id.* at ¶23. With respect to the portion of the affidavit relaying the affiants' knowledge that persons involved in the trafficking of controlled substances regularly use cell phones to accomplish their trafficking activities, appellant countered that "nothing in the remainder of the affidavit establishes that [he] was a 'drug trafficker'" rather

---

[1] Apparently, nothing of evidentiary value was found on appellant's iPhone, as he has raised no issue to that search in this appeal.

than a guest who was merely present "in a location where drugs were found." *Id.* at ¶24. Finally, appellant argued as backup that the application for the search warrant — and its request to search, among other things, all his emails, personal calendars, cellular internet usage, wireless internet usage, GPS data, contact information, text messages, voicemails, notes, photos, and IP addresses — was "ridiculously overbroad" and "highlights precisely why a warrant should not have been granted in the first place given the facts in this case." *Id.* at ¶26.

Appellant continued to forward these dual arguments (lack of probable cause and overbreadth) at the suppression hearing held on May 11, 2016. Keeping with the theme of his written motion, appellant broadly argued it would set "a very dangerous precedent to endorse a rule saying if you're a guest in a home where there is an odor of marijuana and drugs are found . . . that everyone else's cell phone gets to be searched." N.T. Suppression Hearing, 5/11/2016, at 13-14; *see also id.* at 7-8 ("Being around a strong odor of marijuana does not give the government the right to open up our cell phones and search for every aspect of our private lives. To endorse that rule would be to strip every one of us o[f] our constitutional rights when we go to a concert. When we go to parties[,] . . . when others might be smoking marijuana on the porch, when we are in our homes and maybe our spouse who partakes in smoking marijuana and we lose our constitutional right as to what is in our cell phones."). Appellant continued, even granting the affiants' specialized experience and knowledge that drug traffickers frequently use cell phones to facilitate their trade, they still "have to link that [he] was a drug trafficker and . . . they didn't draw that connection with probable cause other than he was a guest in the place where drugs were found." *Id.* at 12-13. As well, appellant echoed his fallback position from his written motion that, even if there was probable cause to support some degree of a search of his cell phone, the "warrant is way overbroad." *Id.* at 16. Appellant questioned the

propriety of allowing government agents to sift through such vast swaths of his personal life, including his entire internet search history and years' worth of GPS location data, arguing that "certainly that can't be allowed without more information or probable cause[.]" *Id.* at 16-17.

Notwithstanding the seeming force of these arguments, they failed to convince the suppression court, which denied appellant's supplemental motion on May 13, 2016. Thereafter, the case proceeded to a joint jury trial on the charges of possession of heroin, possession with intent to deliver heroin, and possession of a small amount of marijuana.[2] For reasons not pertinent here, however, the trial court declared a mistrial on May 25, 2016, and the matter was reassigned to a new trial judge. After appellant's motion to bar retrial on double jeopardy grounds was denied, he agreed to be retried without a jury, and the court found him guilty of possession with intent to deliver heroin and possession of heroin, but not guilty of persons not to possess a firearm and possession of a small amount of marijuana. Subsequently, the trial court imposed a sentence of 1-2 years' imprisonment, with a credit of 94 days for time served.

On appeal, a unanimous panel of the Superior Court affirmed in an unpublished memorandum decision. *See Commonwealth v. Johnson*, 1082 WDA 2017, 2018 WL 5077174 (Pa. Super., filed Oct. 18, 2019). Relevant for our purposes, the panel rejected petitioner's claim that the digital evidence recovered from his cell phone should have been suppressed on the basis that the search warrant was not supported by probable cause and was overbroad.[3] The panel explained that probable cause to support a search

---

[2] *See* 35 P.S. §§780-113(a)(16), (a)(30), and (a)(31), respectively. Appellant was also charged with possession of a firearm prohibited, *see* 18 Pa.C.S. §6105, but that charge was severed from the narcotics charges for purposes of trial.

[3] Preliminarily, the panel disagreed with the trial court's suggestion in its Pa.R.A.P. 1925(a) opinion that appellant's challenge to the search warrant for his cell phone was waived. Contrary to the trial court's explanation that it could not find where this issue was

warrant exists when "'the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.'" *Id*. at *9, *quoting Commonwealth v. Torres*, 177 A.3d 263, 270 (Pa. Super. 2017). From the panel's viewpoint, the fact that appellant was found "in close proximity to firearms and evidence of the distribution of heroin" established a probable cause basis to believe more evidence relating to narcotics distribution would be found on his cell phone. *Id*. at *11.

Turning to appellant's overbreadth challenge, the panel explained that a warrant is unconstitutional for its overbreadth when it "'authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation . . . because it authorizes a general search and seizure.'" *Id*., *quoting Commonwealth v. Orie*, 88 A.3d 983, 1002-03 (Pa. Super. 2014). The panel described that in *Orie*, the court found a warrant to search the defendant's flash drive was overbroad where it sought "'any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format'" and there was no limitation to account for non-criminal use of the flash drive. *Id*. at *12, *quoting Orie*, 88 A.3d at 1008. But the panel found key distinctions between *Orie* and the instant case, the most significant being that the warrant to search appellant's cell phone sought evidence specifically related to the ongoing distribution of narcotics by appellant and his codefendants. Pointing to the affidavit's depiction of the affiants' specialized knowledge that drug traffickers often use cell phones to conduct their business, the panel opined that, unlike the situation in *Orie*, "evidence of a narcotics distribution enterprise would not be limited to a distinct period of time, a limited number of people, or a particular form of

---

raised before the suppression court, the panel correctly noted that appellant raised the claim in his supplemental omnibus pretrial motion filed on May 10, 2016.

digital file." *Id.* Therefore, the panel found that the breadth of the search warrant was necessary and reasonable "due to the digital storage capacity of the electronic device to be searched at that time." *Id.*, *citing Commonwealth v. Dougalewicz*, 113 A.3d 817 (Pa. Super. 2015) (upholding search warrant for contents of defendant's cell phone that related to victim, a minor that defendant was accused of sexually assaulting, for a defined period of time).

Appellant timely sought review in this Court, which we granted in part to address the following question as framed by appellant: "Did the Superior Court err in ruling that the search warrant obtained to search [appellant's] cell phone was not unconstitutionally overbroad, under the Pennsylvania Constitution, by allowing an essentially unlimited search of the device for evidence of illegal narcotics and firearm possession?" *Commonwealth v. Johnson*, 208 A.3d 56 (Pa. 2019) (*per curiam*). Because this issue "implicates constitutional requirements and raises a pure question of law, our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Santiago*, 209 A.3d 912, 919 (Pa. 2019).

Article I, Section 8 of the Pennsylvania Constitution[4] ensures that citizens of this Commonwealth are protected from unreasonable searches and seizures by requiring that warrants: (1) describe the place to be searched and the items to be seized with specificity and (2) be supported by probable cause to believe that the items sought will provide evidence of a crime. *See, e.g.*, *Commonwealth v. Waltson*, 724 A.2d 289, 292 (Pa. 1998). Regarding the former requirement, we have interpreted the phrase "as nearly as may be" in Article I, Section 8 "as requiring more specificity in the description of items to be seized

---

[4] Article I, Section 8 provides, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA.CONST. art. I, §8.

than the federal particularity requirement." *Id.* at 291, *citing Commonwealth v. Grossman*, 555 A.2d 896, 899 (Pa. 1989) ("The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible."). This more stringent requirement makes general searches impossible and "'prevents the seizure of one thing under a warrant describing another.'" *Grossman*, 555 A.2d at 899, *quoting Marron v. United States*, 275 U.S. 192, 196 (1927); *see also Commonwealth v. Matthews*, 285 A.2d 510, 514 (Pa. 1971) ("It cannot be disputed that general or exploratory searches through which officers merely hope to discover evidence of [a]ny kind of [a]ny wrongdoing are not constitutionally permissible.").

Moreover, for particularity purposes, we have clarified that although some courts have treated overbreadth and ambiguity as relating to distinct defects in a warrant, *see Commonwealth v. Santner*, 454 A.2d 24, 25 n.2 (Pa. Super. 1983), "both doctrines diagnose symptoms of the same disease: a warrant whose description does not describe as nearly as may be those items for which there is probable cause." *Grossman*, 555 A.2d at 899-900. For that reason, when assessing the validity of the description contained in a warrant, the natural starting point for a court is to determine for what items probable cause existed. *Id.* at 900. "The sufficiency of the description [in the warrant] must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause [to search] and the description in the warrant requires suppression." *Id.* This is because "[a]n unreasonable discrepancy reveals that the description was not as specific as reasonably possible[,]" *id.*, meaning the warrant is overbroad, ambiguous, or perhaps both.

At the same time, we have also recognized the fact-dependent nature of such claims, and cautioned that "search warrants should 'be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for

instance, that when an exact description of a particular item is not possible, a generic description will suffice.'" *Commonwealth v. Rega*, 933 A.2d 997, 1012 (Pa. 2007), *quoting* Pa.R.Crim.P. 205, Cmt. In that vein, we have held that "where the items to be seized are as precisely identified as the nature of the activity permits and an exact description is virtually impossible, the searching officer is only required to describe the general class of the item he is seeking." *Matthews*, 285 A.2d at 514; *see also Commonwealth v. Johnson*, 42 A.3d 1017, 1032 (Pa. 2012) (search warrant not overbroad where "police were not certain as to the details of the assault and could not know exactly what to specify in the warrant application" and "[t]hus, they needed only to describe the class of items to be seized"); *Commonwealth v. Sherwood*, 982 A.2d 483, 504-05 (Pa. 2009) (descriptions not overbroad, as the warrants "described the items police were seeking as nearly as possible under the circumstances" and the particular evidence sought "could be found in numerous places"); *In re Search Warrant B-21778*, 521 A.2d 422, 426 (Pa. 1987) (search warrant not overbroad where "investigators had no legitimate means of discovering information to narrow down the location of the records").

By and large, this Court has had relatively few occasions to consider overbreadth challenges to search warrants — and certainly none has involved a claim involving the interplay between alleged "drug and gun" activity and the potential for finding digital evidence of such activity on an individual's cell phone. However, as a general matter, we see no logical reason why the legal framework articulated in *Grossman* should not apply here. And since the parties appear to be in agreement on this point, *see* Appellant's Brief at 22-23 (setting forth the *Grossman* test); Commonwealth's Brief at 31 (asserting "*Grossman* is instructive here"), we proceed accordingly.

As noted, the first step in assessing the validity of the description contained in a purportedly overbroad warrant is to "determine for what items probable cause existed."

*Grossman*, 555 A.2d at 900.  Probable cause, as we have said many times over the years, is determined based on the totality of the circumstances.  *See, e.g.*, *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985).  Thus, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 925 (internal quotations and citation omitted).  A reviewing court's duty, in turn, is merely to ensure the issuing authority "had a substantial basis for concluding that probable cause existed.  In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner."  *Commonwealth v. Torres*, 764 A.2d 532, 537-38 (Pa. 2001) (internal citations omitted).

Given the applicable test and the fact that probable cause is one of its main tenets, one might expect that the parties' briefs detail their competing views as to precisely for which items on appellant's cell phone there existed probable cause to search, if any.  However, despite having presented twin attacks to the search warrant on both probable cause and overbreadth grounds at all previous stages of this litigation, in his brief before this Court appellant focuses exclusively on overbreadth; he does not separately address probable cause.  *See, e.g.*, Appellant's Brief at 12 ("the search warrant for [the cell phone] did not describe the discrete items for which the police were searching 'as nearly as may be,' but rather authorized a completely unlimited search of [the phone]") (emphasis omitted).[5]  All parties to this matter, in fact, seem to take the issue of probable cause for

---

[5] The American Civil Liberties Union of Pennsylvania ("ACLU") and the Pennsylvania Association of Criminal Defense Lawyers ("PACDL") filed an *amici curiae* brief in support of appellant, in which they likewise argue "that indiscriminate searches of cell phones and

granted — one *amicus* party even goes so far as to assert that "probable cause is not at issue here." *Amicus* Brief of Pennsylvania District Attorneys Association ("PDAA") at 5. The dissenting justices adopt a similar position. *See* Dissenting Opinion (Saylor, C.J.), slip op. at 2 ("There is nothing about [the] details [in the affidavit of probable cause] that impacts upon [a]ppellant's contention that police cannot engage in an unrestricted search of a cellphone for evidence of drug dealing."); Dissenting Opinion (Mundy, J.), slip op. at 1 (joining in the reasoning of Chief Justice Saylor's dissent). We respectfully disagree.

Presumably, the parties' representations to this Court simply evince their careful attempts to stay within the bounds of the precise question upon which we granted review, which expressly refers to overbreadth. But we find the probable cause and overbreadth inquiries are not easily separated; on the contrary, as *Grossman* makes clear, it is impossible to consider an overbreadth challenge to a search warrant without taking probable cause into account. *See Grossman*, 55 A.2d at 900 (instructing that the sufficiency of the description in the warrant must be measured against those items for which there was probable cause); *see also* Wayne LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, §4.6(a) ("[T]he requirement of particularity is closely tied to the requirement of probable cause."). Moreover, where a search warrant issues in the total absence of probable cause, the warrant is, quite literally in some sense, entirely "overbroad." In light of this reality and our inability to meaningfully untangle the two concepts under the circumstances presented, we are satisfied the question of probable cause is fairly presented for our review. *See generally Commonwealth v. Ruey*, 892 A.2d 802, 809 (Pa. 2006) (concluding that, "although the issue of the technical validity

_____

other electronic storage media conducted pursuant to a search warrant are inconsistent with the fundamental protections of the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution." ACLU & PACDL *Amici* Brief at 4. *Amici* further suggest this Court should "mandate appropriate safeguards in the warrant approval process and in the post-search review by the courts." *Id.* at 5.

of" a search warrant was waived pursuant to Pa.R.A.P. 302(a), "the question as to whether probable cause supported that warrant is still, and has always been, in dispute"). We thus proceed to engage in a probable cause analysis — bearing in mind, of course, the deference we must afford to the issuing authority's probable cause determination, and our plenary review of this legal question.

We begin by reiterating those arguments, from all sources of record, in favor of the issuing authority's determination that a search of appellant's cell phone was supported by probable cause. The Commonwealth's probable cause argument (albeit not specifically titled as such) can be summarized as follows: "Here, given that it was quite clear that a drug-dealing operation was being run out of the apartment in which police encountered [appellant] in the middle of the night, with the multiple cell phones on his person, there was at the very least a fair probability that evidence of his involvement in that operation would be found in the text messages on those phones." Commonwealth's Brief at 14. In other words, the Commonwealth relies on the discovery of multiple cell phones found on appellant's person, coupled with the fact that he was present in an apartment where drugs and guns were found, as the probable cause basis for searching his cell phone. The PDAA argues along the same lines. *See Amicus* Brief for PDAA at 27 ("[Appellant]'s cell phone was one of two found on his person while he was present in the apartment where a large quantity of drugs were located. Not only his presence there, but the fact that he had two cell phones on his person, gave the officers reason to believe there might be evidence of narcotics activity on at last one of those phones.").

We also consider the rationales of the lower courts. As earlier noted, the Superior Court panel below appears to have demanded even less than the Commonwealth offers, concluding that appellant's "close proximity to firearms and evidence of the distribution of heroin" was alone enough to establish "probable cause for officers to believe that

additional evidence of narcotics distribution would be found on [his] cell phone." *Johnson*, 2018 WL 5077174 at *11. The panel also cited — in the context of addressing appellant's overbreadth challenge — the affiants' specialized knowledge that drug traffickers use cell phones to facilitate their business. As for the suppression court's position, although we lack a formal opinion upon which to rely for a more detailed explanation, *see supra* at n.3, we nonetheless observe that the court seemed primarily concerned at the suppression hearing with the facts that appellant "was arrested for drug trafficking" and "had two phones." N.T. Suppression Hearing, 5/11/2016, at 14.

We consider the various arguments identified above and, more broadly, whether the totality of the facts averred in the affidavit of probable cause — when viewed in a common-sense and non-technical manner — provided the issuing authority with a substantial basis for concluding that probable cause existed to search appellant's cell phone. *See Torres*, 764 A.2d at 537-38.

Initially, we reject the notion that, simply because there was probable cause to arrest appellant for constructively possessing the drugs and guns found in another's apartment, there was necessarily probable cause to search his cell phone for evidence of those same offenses. *See generally Commonwealth v. Wallace*, 42 A.3d 1040, 1049-50 (Pa. 2012) ("probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home") (internal quotations and citation omitted); LaFave, *supra*, at §4.6(a) ("While probable cause to arrest merely requires that there be a sufficient probability that a certain person committed an offense, much more is required to establish probable cause for the issuance of a search warrant."). Instead, what is needed is some specific "nexus between the items to be [searched and] seized and the suspected crime committed[.]" *Commonwealth v. Butler*, 291 A.2d 89, 90 (Pa. 1972). Stated more plainly, where law enforcement seeks to search a person's cell

phone based on the person's mere proximity to illegal contraband, some link sufficient to connect the two must be provided in the affidavit of probable cause. *See Commonwealth v. White*, 59 N.E.3d 369, 376 (Mass. 2016) ("even where there is probable cause to suspect the defendant of a crime, police may not . . . search his or her cell[ ]phone to look for evidence unless they have information establishing the existence of particularized evidence likely to be found there").

Our review of the affidavit of probable cause in this case reveals no such link. Notably, appellant's cell phones were discovered on his person, and the affidavit does not otherwise allege he was personally in possession of (or even aware of) the drugs, guns, or anything else related to criminal activity found in the apartment. There is also no indication whatsoever regarding who leased the apartment or appellant's relationship to that individual, and there is no information about the frequency with which appellant visited the apartment or the duration of time he was present on the night in question. As well, since the circumstances that led police to the apartment in the first place were emergency-related, the affidavit lacked the type of more extensive information that frequently attends search warrants in longer-term drug trafficking investigations, such as evidence regarding controlled purchases. Whereas those cases commonly include evidence demonstrating that the target dealers "use cell phone functions — particularly text messages — to conduct their illegal operations," Gershowitz, The Post-*Riley* Search Warrant Protocols and Particularity in Cell Phone Searches, 69 VAND.L.REV. 585, 589 (2016), there is no information of this sort contained in the instant affidavit. Simply put, the affidavit of probable cause in this case provides little more than the bare fact that appellant was present in a place where illegal contraband happened to be found. That fact, in and of itself, cannot supply probable cause for a search of appellant's cell phone. *See, e.g., State v. Keodara*, 364 P.3d 777, 783 (Wash. App. 2015) (warrant overbroad

under the Fourth Amendment where there was no evidence "that would have linked" defendant's cell phone to the crimes listed in the warrant, including possession of firearms and possession with intent to deliver narcotics; "Nothing in the record suggests that anyone saw [defendant] use the phone to make calls or take photos . . . [and t]here was no indication that evidence of firearms or drugs were found with the phone.").

It is for this same reason that we ascribe no value, under the particular facts of this case, to the affiants' specialized knowledge that drug traffickers often use cell phones to conduct their business. *See* Affidavit of Probable Cause, 3/31/2015, at 2 ("From previous drug investigations your affiants have been involved with, [we] have become aware that persons involved in the trafficking of controlled substances regularly use cellular telephones to accomplish their trafficking activities."). While we do not foreclose the possibility that such information may be relevant to probable cause analyses in other circumstances, *cf. Moats v. State*, 168 A.3d 952 (Md. 2017) (collecting cases where officer's expertise relied upon to establish probable cause that defendant's cell phone would contain evidence of crime), the affidavit in this case is entirely bereft of any facts tying the affiants' expert opinion to appellant specifically. On this front, we credit the argument appellant raised before the suppression court, *i.e.*, that there is nothing in the affidavit of probable cause remotely establishing that **he** was a drug trafficker instead of merely a guest in a place where drugs were located, particularly since four other individuals were also present in the apartment and the owner was not. At most, the affidavit tells us only that appellant was present in someone else's apartment when police entered in response to an emergency call and that a protective sweep revealed drugs and guns from somewhere inside.[6] Given the complete absence of any information

---

[6] Chief Justice Saylor's dissenting opinion implies the affidavit established probable cause based on its description that "[d]uring the protective sweep [o]fficers observed in plain view two (2) bricks of heroin on a shelf." Affidavit of Probable Cause, 3/31/2015, at 2.

connecting appellant to the illegal contraband, beyond his general presence in the same apartment where it was found, the affiants' experience and knowledge "that persons involved in the trafficking of controlled substances regularly use [cell phones] to accomplish their trafficking activities[,]" Affidavit of Probable Cause, 3/31/2015, at 2, adds nothing to the probable cause calculus in this particular case. *See, e.g.*, *Commonwealth v. Morin*, 85 N.E. 3d 949, 960 (Mass. 2017) ("police may not rely on the general ubiquitous presence of cellular telephones in daily life . . . as a substitute for particularized information that a specific device contains evidence of a crime").

All that remains is the Commonwealth's argument that appellant's possession of two cell phones, when considered alongside his presence in an apartment where a large quantity of drugs was found, is enough to establish probable cause to search the phones for evidence of illegal narcotics activity. We are not convinced. As the Commonwealth itself acknowledges, the presence of multiple cell phones has been found to be indicative of drug trafficking only "when considered with **other evidence**[.]" Commonwealth's Brief at 23 n.15 (emphasis added), *citing Commonwealth v. West*, 937 A.2d 516, 522-23 (Pa. Super. 2007) (probable cause to believe defendant was engaged in drug dealing where,

---

But as the dissent itself appears to acknowledge, the significance of this information is largely dependent on "whether these drugs were in a room or location to which [a]ppellant had access." Dissenting Opinion (Saylor, C.J.), slip op. at 2. The affidavit fails to supply an answer to this critical question, and thus the cases relied upon by the dissent are distinguishable. *See id.* at 2 n.1, *citing United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006) (where defendant was arrested in an upstairs bedroom, evidence that police found in plain view three loose dime bags of crack cocaine at the bottom of the stairwell gave rise to a reasonable inference of complicity where defendant "could see them, and in fact would be expected to see them, in the regular course of walking through the small home's public spaces"); *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993) (probable cause existed where the record established defendant's "presence in a private apartment just a few feet from a table full of cocaine"). In short, without knowing any information regarding where defendant was seized, where the drugs were found, whether appellant had access to that room, or even the size or general layout of the apartment, we cannot conclude there was probable cause.

*inter alia*, he was in possession of "six individual bags of marijuana, three cell phones, cigars, including one or more containing marijuana, and roughly one thousand dollars in bills, gold coins and silver coins"). But that is precisely what is missing here: some "other evidence" suggesting appellant was engaged in drug dealing, or otherwise linking his cell phone to anything criminal.[7] And while we again do not mean to discount the possibility that the presence of multiple cell phones might, in certain cases, prove significant to a probable cause analysis, this is not one of them.

In sum, given the barren facts and conclusory statements presented in the affidavit of probable cause in this matter, we are unable to find that the issuing authority had a substantial basis for concluding probable cause existed to search appellant's cell phone. We reach this determination even after according deference to the issuing authority's probable cause determination and viewing the information in the affidavit in a common-

---

[7] We observe, parenthetically, that during the various pretrial hearings held in this case, additional and more detailed information was provided than appears in the affidavit of probable cause. For example, there was testimony that $535 in cash was also found on appellant at the time the cell phones were recovered, *see* N.T. Pretrial Motions Hearing, 12/15/2015, at 4, and that appellant had a prior criminal record, *see* N.T. Pretrial Motions Hearing, 2/10/2016, at 64-65. There were also suggestions that the Samsung phone was an untraceable "burner" phone, *see* N.T. Pretrial Motions Hearing, 12/15/2015, at 20, and that when appellant was seized in the apartment he was located in the living room, where the affidavit alleged that other contraband had also been found, *see* Pretrial Motions Hearing, 2/10/2016, at 76. We do not mean to suggest one way or the other whether this additional information, viewed in conjunction with the other facts averred in the affidavit, would have established probable cause; we simply use the example to underscore how crucial it is for law enforcement to supply the utmost detailed information available when seeking a search warrant for electronic devices because it is only the affidavit of probable cause that we may consider in circumstances like the present appeal. *See, e.g.*, *Commonwealth v. Coleman*, 830 A.2d 554, 560 (Pa. 2003) ("In analyzing whether a warrant was supported by probable cause, judicial review is confined to the four corners of the affidavit.") (citation omitted); *see also* Pa.R.Crim.P. 203(B) ("The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits."). As these things typically go, even the slightest alteration in the underlying facts can have great effect on the probable cause analysis.

sense and non-technical manner. Consequently, as appellant's motion to suppress should have been granted with respect to his claim that it was unsupported by probable cause, we reverse the order denying suppression and remand for further proceedings consistent with this opinion.[8]

Justices Todd and Wecht join the Opinion Announcing Judgment of the Court.

Justice Baer concurs in the result.

Chief Justice Saylor files a dissenting opinion in which Justice Donohue joins.

Justice Mundy files a dissenting opinion.

---

[8] We recognize the total lack of probable cause to support any search of appellant's cell phone leaves us without the means necessary to conduct the type of comparative overbreadth analysis that *Grossman* demands. Accordingly, we await a future case to explore that complex issue further. *See generally* Gershowitz, 69 VAND.L.REV. at 601 (discussing in depth how "many post-*Riley* cell phone warrants are far broader in scope than the decision supports[,]" either because they "authorize a search of 'any and all data' on the phone, leading them to resemble [ ] general warrants" or because they "contain[ ] categories of data and applications that are seemingly unrelated to the crime being investigated").