J-S37032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
AHMAD J. THOMAS :
:
Appellant : No. 1145 EDA 2025

Appeal from the PCRA Order Entered April 4, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0003260-2020

BEFORE: DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED DECEMBER 31, 2025**

Appellant Ahmad J. Thomas appeals the order of the Court of Common Pleas of Chester County dismissing Appellant's petition pursuant to the Post Conviction Relief Act (PCRA).[1] We affirm.

On September 10, 2020, Officer Alex Ortiz and Corporal Shawn Dowds responded to the 300 block of East Lincoln Highway in Coatesville and discovered Dialo Smith ("the victim"), lying on the ground with multiple gunshot wounds. Notes of Testimony (N.T.), 4/25/22, at 5-6. The officers took measures to control the victim's bleeding until medics arrived; the victim was unable to communicate due to his condition. *Id.* at 6. In their subsequent investigation, officers recovered cartridge casings and projectiles from the surrounding area. *Id.*

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

The officers were also able to obtain video surveillance that recorded the shooting near where the ballistics evidence was found. The video shows two individuals, which the officers recognized as Appellant and Armon Jones ("Jones"), exit an alley and call out to the victim. *Id.* at 7. Appellant approached the victim and exchanged words. *Id.* Appellant pulled out a firearm and shot at the victim, who was backing away. Appellant and Jones fled the scene in a black Volvo SUV. *Id.*

Corporal Dowds also recognized the victim as a cooperating witness in the prosecution of Jones for the prior shooting of the victim's son. *Id.* at 6, 11. The victim had given a statement inculpating Jones, who fired six shots at the victim's son and hit him once. *Id.* at 11. Investigators determined that Appellant is Jones's cousin. *Id.* at 15-16.

Investigators also discovered that, prior to the shooting, Appellant had posted a Snapchat video of himself sitting with Jones in a car that appeared to be in the same alley recorded in the surveillance video. *Id.* at 8. Appellant and Jones appeared to be wearing clothes that matched the clothing worn by the perpetrators of the shooting. *Id.* Detectives took the surveillance video to a local Volvo dealership where the service manager was able to confirm that the Snapchat video shows Appellant and Jones sitting in a Volvo XC90 (model years 2005-2009). *Id.*

On September 21, 2020, Coatesville Police Officer Eric Himmel conducted a traffic stop of a Ford Fusion in which Appellant was a passenger. *Id.* at 9; N.T., 10/21/21, at 15, 24. Officer Himmel was unaware of

Appellant's involvement in the September shooting and did not know Appellant before this date. N.T., 10/21/21, at 16. During the stop, the occupants of the Ford Fusion admitted they had marijuana and a firearm in the vehicle. *Id.* at 31-32. Once Officer Himmel asked Appellant and the driver to exit the vehicle, Appellant fled the scene. *Id.* at 32-34. After Officer Himmel pursued and apprehended Appellant, he discovered that Appellant was holding a black iPhone. *Id.* at 35-36. As Appellant was placed under arrest, Officer Himmel placed the black iPhone and Appellant's other personal belongings into a property locker. *Id.* at 39-40. Law enforcement verified Appellant's cell phone number from his probation officer and when they placed a call to this number, the black iPhone rang. *Id.* at 75.

On September 22, 2020, detectives applied for and obtained a search warrant for the black iPhone, which included an affidavit of probable cause setting forth extensive detail of the investigation of the shooting of Dialo Smith.

The search warrant limited the items to be searched for to the period of September 7, 2020 – September 22, 2020, a fifteen-day time span beginning three days before the shooting and one day after Appellant was taken into custody. The warrant permitted a search for contact information for the owner of device, written communication data, audio communication, images, videos, stored contacts, voice call records, location data, web history, and system information. The affidavit of probable cause accompanying the warrant included the following justification for the necessity of the search:

During the course of this investigation, it was established that [Appellant] and Armon Jones were in the area of the shooting and are more than likely responsible for the shooting of [the victim]. Just prior to the shooting, [Appellant] used the social media mobile application Snapchat to post a video of both he and Jones sitting in a car consuming marijuana. The video places [Appellant] and Jones in a vehicle matching the one that was present at the scene of the shooting and used to flee, in the location where the vehicle was parked immediately prior to the shooting and establishes Jones and [Appellant] as matching the physical profile of the shooter and his accomplice and wearing the same clothing.

Affidavit of Probable Cause, at 4 (emphasis added).

The affidavit of probable cause then sets forth the affiant's knowledge of how cell phones operate, what records are maintained on a digital device (e.g. written communication, pictures, videos, location data), and how a cell phone can be used to send different types of communications. The affidavit of probable cause also specifies that:

Cell phones and digital devices also maintain video and picture records. Based on your affiant's experience, your affiant knows that it is not uncommon for assailants to maintain pictures or videos or even posted or distributed on social media and through messaging applications and services. This practice symbolizes an assailant showing off or potentially warn others that the assailant should not be challenged.

Your Honor, your affiant submits that probable cause exists to search [Appellant's] Apple iPhone for the items listed to be searched for and seized. … **Your affiant knows that [Appellant] utilized his phone to record the Snapchat video just prior to the shooting. Thus, Your affiant believes that the search warrant will aid in this investigation, by allowing your affiant to search for those that [Appellant] was in contact with. This information will yield [Appellant's] location at the time of the assault, identities of potential co-conspirators, photos and/or video of the assault, communications with co-conspirators and/or the victim, and proof that [Appellant] is owner of the phone.**

- 4 -

Affidavit of Probable Cause, at 4 (emphasis added).

The results of the investigators' search of the black iPhone revealed that Appellant's location data showed he was at the crime scene at the time of the shooting. The search also revealed incriminating videos, photographs, statements, and search history attributable to Appellant.

Officers also obtained a search warrant for Appellant's residence, in which they recovered clothing items consistent with the items worn by the perpetrators of the September 10, 2020 shooting, a 9 mm handgun, a key fob to the Volvo that appeared in the surveillance video in question, and a white iPhone. Subsequent ballistics testing revealed that the firearm found in Appellant's apartment matched the casings found at the scene of the shooting.

Appellant was charged with Attempted Homicide, Conspiracy to Commit Homicide, Aggravated Assault, Criminal Conspiracy to Commit Aggravated Assault, Firearms Not to be Carried without a License, Recklessly Endangering Another Person, Simple Assault, and Possession of an Instrument of Crime. The Commonwealth subsequently added the charge of Retaliation against a Witness and Conspiracy to Commit Retaliation against a Witness.

On October 14, 2021, Appellant filed an omnibus pretrial motion seeking *inter alia* to suppress the evidence obtained in the searches of the black and white iPhones as well as the search of Appellant's residence. The trial court held hearings on the suppression motion on October 20-21, 2021, during which trial counsel argued that the search warrant for the black iPhone was overbroad and lacked particularity.

On November 24, 2021, the trial court denied Appellant's motion to suppress the contents of the black iPhone and evidence discovered in Appellant's apartment. The trial court denied Appellant's suppression motion with respect to the white iPhone as "moot," as the Commonwealth indicated that they would not introduce any evidence retrieved from the white iPhone.

On April 25, 2022, Appellant entered a negotiated guilty plea to Attempted Criminal Homicide, Retaliation against Witness or Victim, and two counts of Criminal Conspiracy. On the same date, the trial court sentenced Appellant to a negotiated term of eighteen to forty years' imprisonment on the attempted homicide charge along with concurrent sentences on the remaining charges.

On May 4, 2022, Appellant filed a motion for reconsideration of sentence, requesting that he be placed in a particular state correctional institution. On May 6, 2022, the trial court granted in part and denied in part the motion for reconsideration. Appellant did not seek to withdraw his guilty plea within the motion for reconsideration. On February 6, 2023, this Court affirmed the judgment of sentence. *See Commonwealth v. Thomas*, 1406 EDA 2022 (Pa.Super. February 6, 2023) (judgment order).

On November 10, 2023, Appellant filed a counseled PCRA petition, claiming trial counsel was ineffective in failing to properly advocate for the suppression of evidence contained on Appellant's black iPhone. In particular, Appellant asserted in his PCRA petition that:

trial counsel was ineffective for failing to argue the holdings of **Commonwealth v. Green**, [671 Pa. 1, 265 A.3d 541 (2021)] and **Commonwealth v. Orie**, [88 A.3d 983 (Pa.Super. 2014)] in particular, that the warrants at issue were overly broad and lacked the particularity required by the Fourth Amendment to the Federal Constitution and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania.

PCRA petition, 11/10/23, at ¶ 18. On March 5, 2025, the Commonwealth filed an answer to Appellant's petition.

On March 10, 2025, the PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. On March 31, 2025, Appellant filed a response to the Rule 907 notice. On April 4, 2025, the PCRA court dismissed Appellant's PCRA petition. This appeal followed.

Appellant raises the following issue for our review:

Did the trial court err and abuse its discretion by dismissing [Appellant's] Post-Conviction Relief Act petition and claim of ineffective assistance of counsel for failing to articulate and argue the holdings of **Commonwealth v. Green** and **Commonwealth v. Orie**, as the holdings in **Green** and **Orie** supported the suppression relief sought by [Appellant], pre-trial?

Appellant's Brief, at 3.

We address the propriety of the PCRA court's denial order as follows:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

**Commonwealth v. Miranda**, 317 A.3d 1070, 1075 (Pa.Super. 2024) (citation omitted).

In reviewing a claim of ineffectiveness of counsel, we are guided by the following principles:

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce*, *supra*; *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

*Commonwealth v. Johnson*, 179 A.3d 1105, 1114 (Pa.Super. 2018) (quoting *Commonwealth v. Natividad*, 598 Pa. 188, 207-208, 938 A.2d 310, 321 (2007)).

It is well-established that "[a] criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Hickman*, 799 A.3d 136 (Pa.Super. 2002)) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

"The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty[.]" *Commonwealth v. Diaz*, 913 A.2d 871, 873 (Pa.Super. 2006) (citation omitted). Instead, "the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea." *Commonwealth v. Morrison*, 878 A.2d 102, 105 (Pa.Super. 2005). "The voluntariness of [the] plea depends on whether counsel's advice was within the range of competence

- 8 -

demanded of attorneys in criminal cases." ***Commonwealth v. Lynch***, 820 A.2d 728, 732 (Pa.Super. 2003) (citation omitted). Therefore, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea." ***Commonwealth v. Allen***, 557 Pa. 135, 732 A.2d 582, 587 (1999).

***Commonweatlh v. Bedell***, 954 A.2d 1209, 1212 (Pa.Super. 2008). In this context, "to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ***Commonwealth v. Barndt***, 74 A.3d 185, 192 (Pa.Super. 2013) (citations and internal quotation marks omitted).

Appellant argues that trial counsel was ineffective in failing to adequately argue his suppression motion challenging the validity of the search warrant for his black iPhone. Appellant acknowledges that trial counsel did advocate for the suppression of the search of his black iPhone on the basis that the search warrant was overly broad and lacked the particularity required by the Fourth Amendment of the federal Constitution and Article I, Section 8 of the Pennsylvania Constitution.[2] Nevertheless, Appellant suggests that trial

_____

[2] The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV (emphasis added). Article I, Section 8 of the Pennsylvania Constitution provides that "no warrant to search any place or to seize any person or things shall issue without describing them *as nearly as may be*." Pa. CONST. Art. I, Section 8 (emphasis added). ***See also*** Pa.R.Crim.P. 504(2) (requiring every complaint to contain "a description of the defendant *as nearly may be*") (emphasis added).

counsel should have advocated more effectively by citing the holdings in the Supreme Court's decision in **Green** and this Court's decision in **Orie** to support his suppression motion.

Before analyzing the specific ineffectiveness claim that Appellant raises, we again highlight that Appellant pled guilty to the relevant charges in this case. As noted above, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea." **Bedell**, 954 A.2d at 1212.

Appellant's binding statements at his guilty plea hearing undermine his claim that counsel unlawfully induced him to plead guilty. It is well-settled that "[a] person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." **Commonwealth v. Pier**, 182 A.3d 476, 480 (Pa.Super. 2018) (citations omitted).

Although Appellant now argues that he had a meritorious suppression claim, Appellant made clear on the record at his guilty plea hearing that he admitted to the aforementioned factual background, admitted to shooting the victim multiple times, indicated he understood the crimes he was charged with and the sentences he faced, and averred that he was fully aware of the rights that he was giving up by pleading guilty. N.T., 4/25/22, at 4-15. Appellant specifically acknowledged that his guilty plea would eliminate his ability to

challenge the trial court's pre-trial rulings on appeal. *Id.* at 4. Appellant also averred that he had sufficient time to discuss his case with trial counsel and was satisfied with his representation. *Id.* at 3. Despite the waiver of his pre-trial suppression claims, Appellant still chose to plead guilty and forgo the appeal of such challenges.

In his appellate brief, Appellant does not acknowledge the applicable manifest injustice standard and makes no argument to suggest in any way that trial counsel was ineffective in advising him to plead guilty or that trial counsel's failure to cite the *Green* and *Orie* cases caused him to enter an involuntary or unknowing guilty plea. We note that nowhere in Appellant's PCRA petition or in his appellate brief does he cite the holding of *Orie* or explain how it applies to his case. We decline to be Appellant's advocate and develop an argument for him on appeal.

To the extent that Appellant's PCRA petition can be construed as alleging that trial counsel's failure to cite to the holding in *Green* deprived him of information upon which to enter a knowing guilty plea, we find Appellant is not entitled to relief.

As noted above, trial counsel did file a suppression motion claiming the search warrant for the black iPhone was overbroad. At the suppression hearing, trial counsel cited the Supreme Court's decision in *Commonwealth v. Johnson*, 662 Pa. 691, 240 A.3d 575 (2020) (Opinion Announcing the Judgment of the Court), which sets forth the following principles:

Article I, Section 8 of the Pennsylvania Constitution ensures that citizens of this Commonwealth are protected from unreasonable searches and seizures by requiring that warrants: (1) describe the place to be searched and the items to be seized with specificity and (2) be supported by probable cause to believe that the items sought will provide evidence of a crime. *See, e.g.*, *Commonwealth v. Waltson*, 555 Pa. 223, 724 A.2d 289, 292 (1998). Regarding the former requirement, we have interpreted the phrase "as nearly as may be" in Article I, Section 8 "as requiring more specificity in the description of items to be seized than the federal particularity requirement." *Id*. at 291, *citing* *Commonwealth v. Grossman*, 521 Pa. 290, 555 A.2d 896, 899 (1989) ("The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible."). This more stringent requirement makes general searches impossible and " 'prevents the seizure of one thing under a warrant describing another.'" *Grossman*, 555 A.2d at 899, *quoting* *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *see also Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510, 514 (1971) ("It cannot be disputed that general or exploratory searches through which officers merely hope to discover evidence of [a]ny kind of [a]ny wrongdoing are not constitutionally permissible.").

Moreover, for particularity purposes, we have clarified that although some courts have treated overbreadth and ambiguity as relating to distinct defects in a warrant, *see Commonwealth v. Santner*, 308 Pa. Super. 67, 454 A.2d 24, 25 n.2 (1982), "both doctrines diagnose symptoms of the same disease: a warrant whose description does not describe as nearly as may be those items for which there is probable cause." *Grossman*, 555 A.2d at 899-900. For that reason, when assessing the validity of the description contained in a warrant, the natural starting point for a court is to determine for what items probable cause existed. *Id*. at 900. "The sufficiency of the description [in the warrant] must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause [to search] and the description in the warrant requires suppression." *Id*. This is because "[a]n unreasonable discrepancy reveals that the description was not as specific as reasonably possible[,]" *id*., meaning the warrant is overbroad, ambiguous, or perhaps both.

At the same time, we have also recognized the fact-dependent nature of such claims, and cautioned that "search warrants should

- 12 -

'be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice.'" ***Commonwealth v. Rega***, 593 Pa. 659, 933 A.2d 997, 1012 (2007), *quoting* Pa.R.Crim.P. 205, Cmt. In that vein, we have held that "where the items to be seized are as precisely identified as the nature of the activity permits and an exact description is virtually impossible, the searching officer is only required to describe the general class of the item he is seeking." ***Matthews***, 285 A.2d at 514; ***see also Commonwealth v. Johnson***, 615 Pa. 354, 42 A.3d 1017, 1032 (2012) (search warrant not overbroad where "police were not certain as to the details of the assault and could not know exactly what to specify in the warrant application" and "[t]hus, they needed only to describe the class of items to be seized"); ***Commonwealth v. Sherwood***, 603 Pa. 92, 982 A.2d 483, 504-05 (2009) (descriptions not overbroad, as the warrants "described the items police were seeking as nearly as possible under the circumstances" and the particular evidence sought "could be found in numerous places"); ***In re Search Warrant B-21778***, 513 Pa. 429, 521 A.2d 422, 426 (1987) (search warrant not overbroad where "investigators had no legitimate means of discovering information to narrow down the location of the records").

***Johnson***, 662 Pa. at 706-708, 240 A.3d at 584-585.

The Supreme Court in ***Green*** reiterated and quoted the aforementioned principles set forth in ***Johnson***. In ***Green***, the Supreme Court analyzed whether a warrant was overbroad when it authorized a digital search of all of defendant's electronic devices for "evidence relating to the possession and/or distribution of child pornography." ***Green***, 671 Pa. at 6, 265 A.3d at 544. The Supreme Court rejected Green's claim that the warrant was overbroad simply because officers had access to the entire device and all the personal, non-criminal information therein. ***Id.*** at 24, 265 A.3d at 554. Instead, the Supreme Court upheld the validity of the warrant as it found its limiting

language was specific enough to restrict officers from using the warrant as a general investigatory tool to uncover evidence of a crime.

Appellant argues that trial counsel should have cited to *Green* to argue that the search warrant for the black iPhone was overbroad in that it allowed for the search of all data without any definition or particularity as to what the investigators were looking for. However, the record shows that trial counsel did make this assertion when he vigorously challenged the specificity of the search warrant citing applicable precedent in *Johnson*. At the suppression hearing, trial counsel specifically argued that the search warrant for the black iPhone was overbroad in seeking to conduct an unjustified "fishing expedition." N.T., 10/21/25, at 26-36. Trial counsel criticized the warrant for not putting a limitation on the written communication it would evaluate and would allow the officers to rummage through Appellant's entire phone. *Id.* at 26, 34. Although trial counsel did not specifically cite to the *Green* or *Orie* cases, he presented the exact claims reviewed in those cases.

In response, the prosecution denied that the warrant was overbroad, arguing that the warrant specifically limited the proposed digital search to a fifteen-day time span from September 7, 2020 to September 22, 2020 to encompass a period three days before the shooting occurred until Appellant's arrest. The Commonwealth also argues that the affidavit of probable cause established a link from Appellant's cell phone to the criminal activity at issue, emphasizing that Appellant had recorded the Snapchat video in question immediately prior to the shooting in a location near the crime scene in which

Appellant and his companion were wearing clothing matching those of the perpetrators recorded in the surveillance video. The Commonwealth also denies that the warrant authorized a general search of Appellant's iPhone as the affidavit of probable cause specified what the officers were looking for as the phone, which likely recorded the video, would contain Appellant's location data to prove he was at the crime scene at the time of the shooting and would also likely contain evidence of conspiracy between Appellant and another individual to shoot the victim.

The trial court ultimately credited the prosecution's arguments and denied the motion to suppress the evidence contained on the black iPhone, finding the prosecution had established "a logical nexus between the items and places [to be] searched and the crimes for which [Appellant] is accused." Order Denying Suppression Motion, 11/24/21, at 5. We agree with the Commonwealth that Appellant has failed to show that the course not chosen by trial counsel – to argue the *Green* and *Orie* cases as suppression – would have provided a substantially greater probability of success, such that the trial court would have suppressed evidence from the black iPhone.

Further, we emphasize that Appellant made no attempt in his PCRA petition or on appeal to establish the prejudice prong of the ineffectiveness standard. Appellant has never asserted that but for trial counsel's failure to cite the *Green* and *Orie* cases, he would not have pled guilty and would have insisted on going to trial. *See Barndt*, *supra*.

Our review of the record shows that while Appellant was charged with attempted homicide, conspiracy to commit homicide, intimidation of a witness, and conspiracy to commit intimidation of a witness, his negotiated guilty plea arranged for a sentence solely on the attempted homicide charge with concurrent sentences on the remaining charges. At Appellant's guilty plea hearing, the prosecution set forth substantial evidence of Appellant's guilt that did not involve evidence obtained from the search of his cell phone. Appellant was recorded on surveillance video approaching the victim with Jones, having an argument, and shooting the victim as he was trying to run away. Appellant had possession of keys to a Volvo SUV matching the getaway car in the surveillance video. Appellant's apartment contained clothes that matched those of the perpetrators of the shooting as well as a handgun whose ballistics evidence matched the casings found at the crime scene. The victim was confirmed to have previously been a cooperating prosecution witness against Jones (Appellant's cousin) with respect to a prior shooting.

Given the overwhelming evidence against Appellant, we conclude that Appellant has failed to meet the prejudice prong to show that but for trial counsel's failure to cite certain case law in his suppression motion, Appellant would not have pled guilty but would have gone to trial.

For the foregoing reasons, we cannot find that Appellant satisfied his burden to prove his ineffectiveness claim. Thus, we conclude that the PCRA court did not err in denying Appellant's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2025